[Cite as *State v. Dukles*, 2013-Ohio-5263.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

    v.

MARC A. DUKLES

    Appellant

C.A. No.    12CA0100-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    11-CR-0686

DECISION AND JOURNAL ENTRY

Dated: December 2, 2013

---

WHITMORE, Judge.

{¶1}    Defendant-Appellant, Marc Dukles, appeals from his convictions in the Medina County Court of Common Pleas. This Court affirms.

I

{¶2}    Dukles was arrested after he and another man, Anthony Diluzio, were involved in a fight at The Grille, a restaurant/bar in Brunswick. Although accounts of the exchange that took place between the two men varied, their meeting resulted in Dukles pulling a knife from his pocket, punching Diluzio in the face, and repeatedly stomping on Diluzio after he fell to the ground. Dukles attempted to flee the scene after stomping on Diluzio, but the establishment's security personnel restrained him. At the time the incident occurred, Dukles was on post-release control.

{¶3}    A grand jury indicted Dukles on each of the following counts: (1) felonious assault, in violation of R.C. 2903.11(A)(1); (2) felonious assault by means of a deadly weapon or

dangerous ordnance, in violation of R.C. 2903.11(A)(2); and (3) carrying a concealed weapon, in violation of R.C. 2923.12(A)(1). Dukles waived his right to a jury, and a bench trial ensued. At the conclusion of the evidence, the court ordered Dukles to file a written Crim.R. 29 motion and adjourned without announcing a verdict. Dukles filed his written motion on August 14, 2012.

{¶4} On September 13, 2012, the trial court issued a ruling on Dukles' written motion. The court's journal entry reads:

> The Court, having considered the [Crim.R. 29] motion, finds that it is not well taken with respect to Counts I and III but that it is well taken with respect to Count II.

> Therefore, on Count II, which is a charge of Felonious Assault in violation of R.C. § 2903.11(A)(2), the Court orders a judgment of acquittal. With respect to Counts I and III, the motion is denied.

The court reiterated its ruling in open court when the trial resumed for purposes of closing arguments. Specifically, the judge stated that he had "directed a verdict of acquittal on Count No. II" and had "not direct[ed] a verdict of acquittal on Count No. I or Count No. III." The attorneys then presented their closing arguments. At the close of the trial, the court adjourned without announcing a verdict on the two outstanding counts.

{¶5} On October 15, 2012, the court issued a written verdict in which it transposed its ruling on the two felonious assault counts. Specifically, the written verdict indicated:

> The Court granted the motion [for acquittal] *as to Count I, but denied it as to Counts II* and III. Mr. Dukles then presented his evidence. * * *

> After considering all of the evidence and the arguments of counsel, this Court finds that Mr. Dukles is *guilty of Count II, Felonious Assault in violation of R.C. 2903.11(A)(2), a felony of the second degree*; and this Court also finds that he is guilty of Count III, Carrying a Concealed Weapon * * *.

(Emphasis added.) The court issued a nunc pro tunc entry on November 14, 2012, to correct its error. In its nunc pro tunc entry, the court wrote that it had granted Dukles' motion for acquittal "as to Count II, but denied it as to Counts I and III." The nunc pro tunc entry went on to find

Dukles guilty of felonious assault, in violation of R.C. 2903.11(A)(1), and carrying a concealed weapon.

{¶6} On November 15, 2012, the court issued its sentencing entry. The sentencing entry found Dukles "guilty of Count I, 'Felonious Assault,' a violation of R.C. 2903.11(A)(1)," as well as guilty of carrying a concealed weapon. The court sentenced Dukles to a total of six years in prison. The sentencing entry also credited Dukles with 340 days for time served.

{¶7} Dukles now appeals from his convictions and raises seven assignments of error for our review. For ease of analysis, we consolidate and rearrange several of the assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT ERRED IN NOT DISPOSING OF MR. DUKLES PLEA OF ONCE IN JEOPARDY.

Assignment of Error Number Two

THE TRIAL COURT ERRED IN NOT FINDING THAT MR. DUKLE[S] HAD ONCE BEEN IN JEOPARDY FOR THIS OFFENSE WHEN HE WAS FOUND NOT GUILTY BY THE OHIO PAROLE AUTHORITY FOR A VIOLATION THAT AROSE FROM THE INCIDENT THAT MR. DUCKLES WAS INDICTED AND FOUND GUILTY OF IN THIS CASE.

{¶8} In his first and second assignments of error, Dukles argues that the trial court erred by not (1) employing the proper procedure to dispose of his plea of once in jeopardy, and (2) disposing of this matter on double jeopardy grounds. According to Dukles, jeopardy attached when the Adult Parole Authority examined evidence pertaining to his fight with Diluzio and concluded that he did not violate the conditions of his post-release control.

{¶9} In 1953, the General Assembly enacted R.C. 2943.06. That statute provides as follows:

> If a defendant pleads a judgment of conviction, acquittal, or former jeopardy, the prosecuting attorney may reply that there is no such conviction, acquittal, or jeopardy. The issue thus made shall be tried to a jury, and on such trial the defendant must produce the record of such conviction, acquittal, or jeopardy, and prove that he is the person charged in such record, and he may also introduce other evidence to establish the identity of such offense. If the prosecuting attorney demurs to said plea and said demurrer is overruled, the prosecuting attorney may then reply to said plea.

R.C. 2943.06. In 1973, the Rules of Criminal Procedure took effect and limited the pleas that could be entered in criminal cases to pleas of not guilty, not guilty by reason of insanity, guilty, or no contest. Crim.R. 11(A); Crim.R. 59(A). Although R.C. 2943.06 has never been repealed, this Court has held that the statute "[has] been superseded by portions of Crim.R. 12." *Tallmadge v. Haught*, 9th Dist. Summit No. 18379, 1997 WL 423049, *1 (July 7, 1997), quoting *State v. Hollins*, 9th Dist. Summit Nos. 8636 & 8637, 1978 WL 215276, *2 (June 30, 1978). In *Haught*, we held that it was proper for a trial court to treat a defendant's "plea" under R.C. 2943.06 as a motion to dismiss. *Haught* at *1.

{¶10} At his arraignment, Dukles attempted to enter a plea of "once in jeopardy." The trial court made note of Dukles' request to plead that way and also entered a plea of not guilty on his behalf. The matter then proceeded to trial. The court did not address Dukles' double jeopardy argument until after the first full day of trial and did not reject it until after the State rested. Dukles argues that the court committed reversible error by not following the procedure set forth in R.C. 2943.06 or, in the alternative, by not treating his plea as a Crim.R. 12(C) motion and disposing of it prior to trial.

{¶11} Because Crim.R. 12 supersedes R.C. 2943.06, the trial court was not required to follow the procedures outlined in the statute. *See Haught* at *1, quoting *Hollins* at *2. Crim.R.

12 alone would govern any motion seeking a dismissal on double jeopardy grounds. Yet, Dukles never filed a pretrial motion regarding his claim of double jeopardy. *Compare State v. Lamp*, 9th Dist. Summit No. 26602, 2013-Ohio-1219. The only indication in the record that Dukles even raised the issue of double jeopardy before his trial is a single notation in the journal entry the court issued after Dukles' arraignment. The notation reads: "Also plea of 'once in jeopardy.'" Dukles never raised the issue again before trial. He also never provided the court with any evidence before trial to substantiate his claim of double jeopardy. *See State v. Busby*, 9th Dist. Summit No. 21229, 2003-Ohio-3361, ¶ 7 ("Appellant bears the burden of proof on a motion to dismiss regarding multiple offenses."). The trial court, therefore, did not commit reversible error when it failed to dispose of Dukles' claim of double jeopardy before trial. Further, the trial court did not err by ultimately rejecting Dukles' double jeopardy argument.

{¶12} "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution protect criminal defendants against multiple prosecutions for the same offense." *State v. Hartman*, 9th Dist. Medina No. 12CA0057-M, 2013-Ohio-4407, ¶ 9, quoting *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 14. "Each clause 'prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.'" *Hartman* at ¶ 9, quoting *State v. Gustafson*, 76 Ohio St.3d 425, 432 (1996). Dukles argues that he was subjected to a second prosecution for the same offense after an acquittal.

{¶13} There was testimony at trial that, after the fight with Diluzio occurred, Dukles was charged with violating the conditions of his post-release control and the Adult Parole Authority conducted a hearing on the violations. There also was testimony that the hearing

officer for the Adult Parole Authority found there was insufficient evidence that Dukles had assaulted Diluzio. Dukles argues that the proceeding before the Adult Parole Authority amounted to a prosecution and resulted in an acquittal. Therefore, he argues that his subsequent criminal trial was an unconstitutional, second prosecution for the same offense. We do not agree.

{¶14} The Ohio Supreme Court has held that:

R.C. 2967.28(F)(4), which specifies that a person released on post[-]release control who violates conditions of that post[-]release control faces a term of incarceration for the violation *as well as criminal prosecution for the conduct that was the subject of the violation* as a felony in its own right, does not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions.

(Emphasis added.) *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, syllabus. *Accord State v. Fairley*, 9th Dist. Lorain No. 00CA007675, 2001 WL 324376, *1 (Apr. 4, 2001) ("[B]ecause a post-release control sanction is not a criminal punishment, the Double Jeopardy Clause does not prohibit a subsequent prosecution * * * based on the same conduct."). Although the defendant in *Martello* was found to have violated the conditions of his post-release control, it stands to reason that *Martello's* holding applies regardless of the final outcome of a defendant's post-release control proceeding (i.e., whether the Adult Parole Authority finds that the defendant has violated the conditions of his post-release control or finds that he has not). A post-release control violation proceeding is not a criminal prosecution. *See generally Martello* at ¶ 18-27 (post-release control violation categorized as civil penalty). Accordingly, the State was not barred from prosecuting Dukles simply because the Adult Parole Authority found that he did not violate the conditions of his post-release control. Dukles' first and second assignments of error are overruled.

Assignment of Error Number Three

THE TRIAL COURT ERRED IN FINDING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THAT MARC DUKLES VIOLATED OHIO REVISED CODE SECTION 2903.11(A)(1), FELONIOUS ASSAULT AND OHIO REVISED CODE 2923.12(A)(1) CARRYING A CONCEALED WEAPON.

{¶15} In his third assignment of error, Dukles argues that his convictions are against the manifest weight of the evidence. We disagree.

{¶16} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶17} R.C. 2903.11(A)(1) provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." "Serious physical harm" includes any physical harm "that carries a substantial risk of death" and "that involves some temporary, substantial

incapacity." R.C. 2901.01(A)(5)(b), (c). Whoever commits the foregoing offense is guilty of felonious assault. R.C. 2903.11(D)(1)(a).

{¶18} R.C. 2923.12(A)(1) provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, * * * [a] deadly weapon other than a handgun." A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). Whoever commits the foregoing offense is guilty of carrying a concealed weapon. R.C. 2923.12(F)(1).

{¶19} Diluzio testified that he was seated at a table with his girlfriend, her sister, and another female friend when Dukles sat down at their table. At some point, the women at the table became uncomfortable because Dukles was "hitting on them." Dukles then left the table and Diluzio followed. Diluzio testified that he confronted Dukles to tell him to stay away from Diluzio's girlfriend's sister (Teresa Campbell). As Diluzio was talking to Dukles, Dukles removed a knife from his pocket and held it down by his side. Diluzio stated that he was "kind of shocked" at that point and "said something along the lines of, 'Oh, you're going to pull a knife on me[?]'" According to Diluzio, the next thing he remembered was being pushed into an ambulance on a stretcher. He testified that, as a result of the injuries he received from Dukles, his entire face was swollen and he had a headache for over a week. Diluzio also testified that he never threatened Dukles.

{¶20} Teresa Campbell testified that she was sitting at a table with her sister, her friend, and Diluzio (her sister's boyfriend) when a man sat down at their table. The man began speaking with Campbell's friend, showed the women a prison ID, and told them that he "was not in prison for being a sexual predator." Campbell testified that when her sister and her friend left the table

to go to the bathroom, Diluzio walked over to the man and told him that she was not interested in speaking with him. The two men began to argue and Campbell turned her back on them to try to spot her sister. She then heard Diluzio holler, "You pulled a knife out on me?" and turned back around to face the men. Campbell observed Dukles holding a knife at his side and started screaming that he had a knife. Campbell then turned away again to look for her sister and, when she turned back, saw Diluzio lying on the ground. Campbell stated that Diluzio was "unresponsive" while on the ground, but Dukles kicked him repeatedly. As Dukles kicked Diluzio, Campbell said she "could see [Diluzio's] head bouncing off the ground."

{¶21} Several eyewitnesses to the fight between Diluzio and Dukles testified at trial. Travis Styers testified that he saw two males in a "potential fight" while he was playing volleyball. One of the males had a hat on, and Styers later identified that man as Dukles. Styers stated that he saw the man without the hat gesture towards Dukles in what appeared to be a pushing, shoving, or slapping motion. He then saw Dukles punch the man. Styers testified that the man Dukles punched "appeared to be knocked out" and never moved once he hit the ground. Nevertheless, Dukles stepped around the man and kicked him twice. Styers stated that there was a "minor pause" in between the time that the man fell to the ground and the time that Dukles began to kick him.

{¶22} Brittany Cartellone was also playing volleyball when she saw two men "starting to shove each other." Cartellone testified that both men shoved one another, but she could not remember who started the shoving. After the men shoved one another, the man wearing a hat punched the other man in the face, knocking him to the ground. Cartellone stated that the man who fell to the ground was lying "on his back, face up, just not moving." The man who had thrown the punch then circled around the fallen man's body and "stomped on the man's face

with his right heel." He then stomped the man again on the man's chest. Cartellone testified that the man who fell to the ground never moved after he fell. She further testified that, after several people stepped forward to stop the attack, the man wearing the hat fled.

{¶23} Kimberly Ferari testified that she and her husband were having a drink on the patio at The Grill when she saw a man in a hat hit another man in the face. Ferari testified that the man who was punched fell to the ground and never moved. The man in the hat then walked over to where the man on the ground was laying, kicked him in the face, and took a few steps back. He then walked forward and kicked the man again.

{¶24} Aaron Fischer testified that he was approximately 20 to 30 feet away when he saw one man "smacking [another man] in the face" and "egging him on to fight him." According to Fischer, the man who was smacking the other used an open hand to hit the other man in the face three or four times. The man who was getting smacked then threw a punch and knocked the other man to the ground. Fischer testified that the man who threw the punch stomped on the other man twice after he fell to the ground. Fischer also testified that he never saw the man who fell to the ground move after he went down.

{¶25} Howard Lee testified that he was working as a bouncer at The Grille when a crowd of people started yelling for his help. Lee ran over and observed Dukles standing over a man on the ground. Dukles ran as Lee tried to make his way toward him, but Lee was able to grab him and force him to the ground. Lee testified that Dukles repeatedly asked to be let go and tried to pull away when Lee indicated that the police were on their way. After the police arrived, Lee handed over Dukles and walked back to the man on the ground. Lee stated that the man was "motionless" and "looked like he was barely breathing."

{¶26} Dr. Karen Rickert, a physician in the emergency room at Southwest General, treated Diluzio after he arrived at the hospital. Dr. Rickert ultimately diagnosed Diluzio with a closed head injury, concussion. Although Dr. Rickert included in her diagnosis that Diluzio had not lost consciousness, she testified that her only reason for doing so must have been that "[s]omewhere along the line [Diluzio] must have told me he remembered everything." Dr. Rickert agreed that head injuries can affect the reliability of a person's memory and that a person might not know if they were unconscious for a brief period of time. She further testified that closed head injuries are potentially fatal and involve a temporary, substantial incapacity.

{¶27} Ted Davis, a supervising officer for the Adult Parole Authority, testified that he had Dukles arrested and incarcerated when he learned of his fight with Diluzio because it occurred while Dukles was on post-release control. Davis interviewed Dukles after he was arrested. During the interview, Dukles admitted that he had punched and kicked Diluzio, but denied that he had a knife. Dukles also stated that he had kicked Diluzio's torso, but might "have inadvertently hit him on the head when he was stomping on him." Despite the fact that he denied having a knife, Dukles also stated at the end of the interview that "[i]f [he] had known [he] was going to end up [in prison] for doing what [he] did, [he] would have carved [Diluzio] up."

{¶28} Dukles testified that Diluzio approached him after he went to leave the picnic table where Diluzio and his female friends were sitting. Dukles claimed that Diluzio accused him of disrespecting the women at the table and threatened to kill him. According to Dukles, Diluzio stated that he would "kill [Dukles'] entire family" and "burn [his] house to the ground." Dukles then tried to walk away and Diluzio followed him. At that point, Dukles testified, he felt that Diluzio might attack him, so he pulled out a knife from his pocket. Nevertheless, Diluzio

began to hit him in the face. After the third hit to the face, Dukles punched Diluzio. Dukles testified that he punched Diluzio instead of walking away because he felt that it was not safe for him to turn his back on Diluzio. He further testified that he kicked Diluzio when Diluzio was on the ground because he believed he saw Diluzio pushing himself back up and heard Diluzio threatening to kill him again. According to Dukles, he tried to leave the scene after he kicked Diluzio because the hand with which he had punched Diluzio required medical attention.

{¶29} Dukles argues that his felonious assault conviction is against the manifest weight of the evidence because the evidence was such that Diluzio was the initial aggressor and Dukles appropriately acted in self-defense. "A defendant has the burden of establishing the affirmative defense of self-defense by a preponderance of the evidence." *State v. Gates*, 9th Dist. Summit No. 24941, 2010-Ohio-2994, ¶ 7.

> To establish self-defense for the use of less than deadly force in defense of one's person, the defendant must prove: (1) he was not at fault in creating the situation which gave rise to the event in which the use of non-deadly force occurred; (2) he had honest and reasonable grounds to believe that such conduct was necessary to defend himself against the imminent use of unlawful force; and (3) the force used was not likely to cause death or great bodily harm.

*State v. Tanner*, 9th Dist. Medina No. 3258-M, 2002-Ohio-2662, ¶ 21. "[I]n general, 'one may use such force as the circumstances require to protect oneself against such danger as one has good reason to apprehend.'" *Gates* at ¶ 7, quoting *Akron v. Dokes*, 31 Ohio App.3d 24, 25 (9th Dist.1986). If a person's response to non-deadly force is excessive, he or she may exceed the scope of the self-defense privilege and be subject to criminal charges. *See State v. Morrison*, 9th Dist. Summit No. 15917, 1993 WL 140442, *2 (May 5, 1993).

{¶30} Even assuming that Dukles was not at fault in creating the situation with Diluzio, multiple eyewitnesses testified that Dukles repeatedly stomped on Diluzio after he fell to the ground. Those same witnesses testified that Diluzio never moved after he fell. Campbell, in

particular, testified that Diluzio's head was "bouncing off the ground" as Diluzio kicked him. Dukles was the only person who testified that Diluzio tried to get back up after Dukles punched him. Everyone else testified that Diluzio was completely motionless once he was on the ground. Moreover, several witnesses saw Dukles pause to reposition himself before he kicked Diluzio. Accordingly, there was evidence from which the trier of fact could have concluded that Dukles had the opportunity to observe Diluzio's lack of movement before he began to kick him. Although Diluzio did not suffer any long-term injuries as a result of Dukles' conduct, Dr. Rickert testified that closed head injuries are potentially fatal and involve a temporary, substantial incapacity. Given the testimony of all of the eyewitnesses, the trier of fact reasonably could have concluded that Dukles exceeded the scope of any self-defense privilege he had by repeatedly kicking Diluzio after he fell to the ground. *See Gates* at ¶ 7; *Morrison* at *2. Having reviewed the record, we cannot conclude that this is the exceptional case where the trier of fact lost its way by convicting Dukles of felonious assault.

{¶31} Dukles also argues that his conviction for carrying a concealed weapon is against the manifest weight of the evidence because "a finding [of] self-defense [on the felonious assault charge] would also require a finding of not guilty on the charge of carrying a concealed weapon." We have already concluded, however, that the trier of fact did not lose its way by rejecting Dukles' self-defense argument. Accordingly, we also reject Dukles' limited argument that his carrying a concealed weapon conviction must be reversed under a self-defense theory. Dukles' third assignment of error is overruled.

Assignment of Error Number Six

THE TRIAL COURT ERRED BY PERMITTING AN IMPROPER ARGUMENT OF THE PROSECUTOR DURING CLOSING ARGUMENT REGARDING PREVIOUS OFFENSES OVER OBJECTION OF THE DEFENDANT'S COUNSEL.

**{¶32}** In his sixth assignment of error, Dukles argues that the trial court erred by not granting a mistrial when the prosecutor improperly mischaracterized the evidence during closing argument. We disagree.

**{¶33}** In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced. *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *State v. Knight*, 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, ¶ 6, citing *State v. Carter*, 72 Ohio St.3d 545, 557 (1995). The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him. *State v. Lollis*, 9th Dist. Summit No. 24826, 2010-Ohio-4457, ¶ 24. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

**{¶34}** Dukles argues that the prosecutor committed misconduct when he stated during closing argument that the hand Dukles injured when he punched Dukles was "the same hand that he broke while assaulting others previously." Dukles objected to the prosecutor's statement, and the prosecutor indicated that he believed he had asked Dukles about his prior hand injury. The court then overruled the objection. Dukles argues on appeal that he never actually answered the prosecutor's question about his injured hand on cross-examination because his counsel's objection interrupted his response. He further argues that there was no evidence that the injury to his hand was the result of his assaulting someone.

**{¶35}** The record reflects that the following exchange took place during the prosecutor's

cross-examination of Dukles:

[PROSECUTOR:] Your hand injury, it's true that your hand had been injured before; isn't that right?

[DUKLES:] Yeah.

[PROSECUTOR:] You struck a fellow inmate and injured your hand prior to this incident; isn't that correct?

[DEFENSE COUNSEL:] Objection.

[PROSECUTOR:] That was the source of your injury?

[DEFENSE COUNSEL:] Objection.

THE COURT: Overruled – well, I'm not sure what the relevance is in the first place.

[PROSECUTOR:] Had you injured that hand before?

[PROSECUTOR:] I'm sorry, Judge. I'll stop.

THE COURT: That's okay. I'm looking something up. Yes, you may answer the question. Has that hand been injured before?

[DUKLES:] Yes, I have.

[PROSECUTOR:] And how long before had you injured that hand?

[DUKLES:] The most recent was – I believe it was either June or July of 2011.

* * *

[PROSECUTOR]: How did you hurt it in June or July? Were you in prison?

[DUKLES:] Yes.

[PROSECUTOR:] So the last time you got violated for [] disorderly conduct * * *, you went in prison, hit someone and hurt your hand?

[DUKLES:] Yes.

Accordingly, there was testimony from Dukles that he injured his hand before by punching someone while he was in prison. Dukles is incorrect that the prosecutor never received answers to his questions about how Dukles had injured his hand in the past.

**{¶36}** To the extent that the prosecutor characterized Dukles' prior hand injury as an assault, "a prosecutor has wide latitude during closing argument to present his or her most convincing position based on the evidence presented at trial." *State v. Scheck*, 9th Dist. Medina No. 05CA0033-M, 2006-Ohio-647, ¶ 19, quoting *State v. Smith*, 9th Dist. Wayne Nos. 01CA0039 & 01CA0055, 2002-Ohio-4402, ¶ 103. Moreover, Dukles' case was tried to the bench. "There is a presumption in a bench trial that the trial judge knows and follows the law, and only considers matter properly before it." *State v. Pleban*, 9th Dist. Lorain No. 10CA009789, 2011-Ohio-3254, ¶ 45. Even assuming that the prosecutor's characterization was improper, Dukles has not shown that the mischaracterization deprived him of a fair trial. *See Knight*, 2004-Ohio-1227, at ¶ 6. Dukles' sixth assignment of error is overruled.

Assignment of Error Number Four

THE COURT ERRED BY CHANGING THE VERDICT ENTERED VIA A NUNC PRO TUNC ENTRY.

**{¶37}** In his fourth assignment of error, Dukles argues that the court erred when it attempted to modify its verdict by way of a nunc pro tunc entry. According to Dukles, once a court has filed a verdict of acquittal, double jeopardy bars the court from any attempt to undo the acquittal. As explained below, the trial court's misstatement in its verdict entry did not result in a judgment entry of acquittal on Dukles' first count of felonious assault.

**{¶38}** In the procedural history portion of this opinion, this Court set forth the series of entries that the trial court filed. The trial court issued a written verdict on October 15, 2012. Before the written verdict, however, the court issued a written ruling on Dukles' motion for

acquittal and addressed the parties on the record in open court before closing argument. Both the written ruling on the motion for acquittal and the court's recitation of that ruling in open court indicate that the court acquitted Dukles on his second count of felonious assault, which was a violation of R.C. 2903.11(A)(2). The court's October 15th verdict entry then erroneously (1) noted that the court had granted the motion for acquittal on the first count of felonious assault, and (2) found Dukles guilty on the second count of felonious assault. Subsequently, the court issued a nunc pro tunc entry to correct the October 15th verdict entry. The corrected entry properly noted that the court previously had acquitted Dukles on the second count of felonious assault. It also set forth a finding of guilt on Dukles' first count of felonious assault.

{¶39} Dukles seeks to take advantage of the trial court's mistake in its October 15th entry by claiming that double jeopardy principles prohibit the correction of even a clear error in an entry of acquittal. Yet, this is not a case where the court purposely, albeit erroneously, entered an acquittal. *Compare Evans v. Michigan*, ___ U.S. ___, 133 S.Ct. 1069 (2013) (retrial barred after court mistakenly concluded that statute required proof of an additional element, found that the State failed to prove that element, and erroneously entered an acquittal); *Fong Foo v. United States*, 369 U.S. 141 (1962) (retrial barred after acquittal based on prosecutorial misconduct and witness credibility issues). This is a case where the court first entered a written acquittal ruling, reiterated that same ruling in open court, and then misstated its acquittal ruling in its subsequent verdict entry. On its face, the October 15th verdict entry clearly contains an error because it begins by noting that the court had "granted the motion [for acquittal] as to Count I, but [had] denied it as to Counts II and III." In fact, the court had granted the motion for acquittal as to Count II, but had denied it as to Counts I and III. The record reflects that the court, in its October 15th verdict entry, inaccurately relayed what it had ordered in its acquittal

ruling. The court's October 15th verdict entry does not order an acquittal on Count I; it inaccurately summarizes the court's prior acquittal ruling. The record does not contain any entry that grants Dukles' motion for acquittal on Count I. Contrary to Dukles' argument, the court did not acquit him on Count I.

{¶40} Crim.R. 36 permits a court to correct a clerical mistake in a judgment "at any time." The "appropriate remedy" for a clerical mistake is "generally a nunc pro tunc entry." (Internal quotations and citations omitted.) *State v. Battle*, 9th Dist. Summit No. 23404, 2007-Ohio-2475, ¶ 5. "[N]unc pro tunc entries are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided or what the court intended to decide." *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164 (1995).

{¶41} It is clear from the record that the trial court acquitted Dukles on his second count of felonious assault, in violation of R.C. 2903.11(A)(2), before the conclusion of trial. The court issued a written ruling to that effect on September 13, 2012, and announced that ruling in open court. When the court later misstated that ruling in its October 15th verdict entry, it properly used a nunc pro tunc entry to correct its misstatement and issued a verdict entry that reflected what the court had actually decided. *See State v. Perkins*, 190 Ohio App.3d 328, 2010-Ohio-5058, ¶ 17-18 (3d Dist.). The court did not offend the principles of double jeopardy by doing so. *Compare State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, ¶ 22-26. Dukles' fourth assignment of error is overruled.

Assignment of Error Number Five

THE TRIAL COURT ERRED BY SENTENCING DEFENDANT TO SIX YEARS ON THE CHARGE OF FELONIOUS ASSAULT.

{¶42} In his fifth assignment of error, Dukles argues that the trial court erred by sentencing him to six years on his felonious assault charge. We disagree.

**{¶43}** Trial courts have "full discretion * * * to sentence defendants within the bounds prescribed by statute." *State v. Evans*, 9th Dist. Medina No. 09CA0049-M, 2010-Ohio-3545, ¶ 32, citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraphs one through seven of the syllabus. Appellate courts apply a two-step approach in reviewing the sentence that a trial court has imposed upon a defendant. *Evans* at ¶ 32, quoting *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 4. "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." *Kalish* at ¶ 4. An abuse of discretion implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶44}** Dukles argues that the trial court erred by issuing him a sentence that was "considerably closer to the maximum than the minimum," as a lengthier sentence was not warranted under the factors set forth in R.C. 2929.12. "R.C. 2929.12(A) sets forth the general guidance factors associated with felony sentencing, including the seriousness of the conduct, the likelihood of recidivism, and 'any other factors that are relevant to achieving those purposes and principles of sentencing.'" *State v. Jones*, 9th Dist. Summit No. 24469, 2010-Ohio-879, ¶ 39, quoting R.C. 2929.12(A). According to Dukles, the court did not specifically discuss its consideration of the sentencing factors contained in R.C. 2929.12, and those factors do not support the six-year sentence he received.

**{¶45}** "[W]here the trial court does not put on the record its consideration of [R.C.] 2929.11 and 2929.12, it is presumed that the trial court gave proper consideration to those statutes." (Alterations omitted.) *State v. Steidl*, 9th Dist. Medina No. 10CA0025-M, 2011-Ohio-

2320, ¶ 13, quoting *Kalish* at ¶ 18, fn. 4. The trial court wrote in its sentencing entry that, in imposing Dukles' term of imprisonment, the court found that the term "would adequately punish [Dukles] and/or protect the public from future crimes by [him] * * *." The court's statement is derived directly from the purposes of felony sentencing outlined in R.C. 2929.11. Accordingly, the language in the court's entry belies Dukles' assertion that the court failed to consider R.C. 2929.11 and 2929.12 in imposing his sentence.

**{¶46}** The record also reflects that there was a pre-sentence investigation report ("PSI") completed in this matter. Both attorneys and the court referenced the PSI at sentencing. Moreover, the court clearly relied on it, as the court discussed at sentencing Dukles' prior convictions, the fact that he was a "high-risk offender" based "on the ORAS score," and the number of rule infractions Dukles had incurred while incarcerated. The record, however, does not contain the PSI. "When a trial court has clearly relied upon a PSI in imposing a sentence, a defendant challenging his sentence bears the burden of ensuring that the PSI is included in the appellate record. In the absence of a complete record, this Court has no choice but to presume regularity." (Internal citations omitted.) *State v. Linde*, 9th Dist. Summit No. 26714, 2013-Ohio-3503, ¶ 23. Dukles failed to ensure that the appellate record contained his PSI. "Given the record before us, we cannot conclude that the trial court failed to consider the appropriate sentencing factors before sentencing [Dukles] or that its decision to sentence [Dukles] to more than the [minimum] prison term * * * constituted error." *Id.* at ¶ 24. Dukles' fifth assignment of error is overruled.

Assignment of Error Number Seven

> THE COURT ERRED BY NOT GRANTING THE JAIL TIME CREDIT REQUESTED IN MR. DUKLES' PRO SE MOTION.

{**¶47**}  In his seventh assignment of error, Dukles argues that the court erred by not granting his pro se motion for jail-time credit.  We disagree.

{**¶48**}  This Court has held that

a motion to correct [jail-time credit] is appropriate only where the alleged error involves a mistake other than an allegedly erroneous legal determination.  Absent any evidence that the trial court was required to grant credit for time served where it granted none, or intended to grant a different amount of credit than it awarded, a motion to correct is not appropriate.  Absent such evidence, the defendant is essentially challenging an allegedly erroneous legal determination, which challenge is properly launched only upon appellate review.

*State v. Harbert*, 9th Dist. Summit No. 20955, 2002-Ohio-6114, ¶ 17.  *See also State v. Clark*, 9th Dist. Summit No. 26673, 2013-Ohio-2984, ¶ 15-17 (trial court lost jurisdiction to award further jail-time credit once appeal had been filed).  In his pro se motion for jail-time credit, Dukles argued that he did not receive all the credit to which he was entitled because the court failed to count the days he spent incarcerated on the post-release control violation charges that resulted from his fight with Diluzio.  Dukles' motion, therefore, was premised upon the trial court having made an erroneous legal determination in its jail-time credit calculation, not simply a mistake.  Accordingly, the proper way for Dukles to challenge the alleged error was by way of appeal.  *Harbert* at ¶ 17.  As such, the trial court did not err by failing to grant his motion for jail-time credit.  Dukles' seventh assignment of error is overruled.

III

{**¶49**}  Dukles' assignments of error are overruled.  The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT


CARR, P. J.
CONCURS.

BELFANCE, J.
CONCURRING IN JUDGMENT ONLY.

{¶50}  I concur in the majority's judgment.

{¶51}  The premise of Mr. Dukles' fourth assignment of error is that, in the initial entry reflecting the verdict, the trial court acquitted him of count one and, because of that, the trial court could not alter the entry with a nunc pro tunc as such would violate his right against double jeopardy.  However, because I would conclude that Mr. Dukles' premise is faulty, I agree that his assignment of error is properly overruled.  The journal entry ruling on Mr. Dukles' Crim.R. 29 motion states that the motion is well taken with respect to Count II but not well taken with

respect to Counts I and III. Accordingly, in that same entry, the trial court ordered a judgment of acquittal with respect only to Count II. Following the bench trial, the trial court entered an entry reflecting the verdict. In that entry, the trial court discussed events that had already taken place, stating "[t]he Court *granted* the [Crim.R. 29] motion as to Count I, but denied it as to Counts II and III." (Emphasis added.) Unfortunately, the trial court inaccurately relayed what it had ordered in the entry ruling on Mr. Dukles' Crim.R. 29 motion. Mr. Dukles interprets the above quoted phrase as granting a judgment of acquittal on Count I. I cannot agree with that interpretation. The above quoted language does not order an acquittal; instead, it inaccurately reflects a prior order of the trial court. Further, there is no entry that states that the trial court *grants* a judgment of acquittal on Count I. Accordingly, I cannot conclude that the trial court ever acquitted Mr. Dukles on Count I. As such, Mr. Dukles' argument concerning double jeopardy must also fail.

{¶52} With respect to Mr. Dukles' fifth assignment of error, I agree that it is properly overruled. Mr. Dukles appears to argue that the trial court improperly weighted the factors in R.C. 2929.12 and, as a result, imposed an unreasonably harsh sentence. However, because Mr. Dukles has not included the PSI in the record, which was considered at sentencing, this Court cannot know the totality of the information before the trial court in rendering its sentence. Accordingly, this Court must presume that the trial court, in evaluating all the evidence before it, properly considered and weighed the factors at issue in arriving at a sentence. *See, e.g., State v. Weems,* 9th Dist. Summit No. 26532, 2013-Ohio-2673, ¶ 10.

APPEARANCES:

SEAN BUCHANAN, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.