[Cite as *Akron v. Perkins*, 2025-Ohio-5320.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

CITY OF AKRON

    Appellee

    v.

LADORIS PERKINS

    Appellant

C.A. No.    31292

APPEAL FROM JUDGMENT
ENTERED IN THE
AKRON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.    24 CRB 05567

DECISION AND JOURNAL ENTRY

Dated: November 26, 2025

FLAGG LANZINGER, Presiding Judge.

{¶1} Ladoris Perkins appeals from the judgment of the Akron Municipal Court. For the following reasons, this Court affirms.

I.

{¶2} Perkins was charged with one count of assault, a first-degree misdemeanor, in violation of Akron City Code 135.03. The charge was based upon allegations that Perkins repeatedly hit K.V. after an argument about money and/or cigarettes. Perkins pleaded not guilty, and the matter proceeded to a jury trial.

{¶3} At trial, the State presented testimony from K.V., Isaiah, and two police officers who responded to the scene. This Court will address each witness's testimony in turn.

{¶4} K.V., Isaiah, and Perkins live in separate apartments in the same apartment building. The testimony indicated that K.V. and Isaiah were friends at the time of the underlying incident, but dating at the time of trial. According to K.V., she went to Isaiah's apartment on July

17, 2024, to help Isaiah with laundry and dishes because Isaiah has medical issues. K.V. testified that she and Isaiah were watching television in Isaiah's bedroom when they heard a knock at the door. K.V. went to the door and saw Perkins, whom K.V. had seen around the apartment building but did not know well. Isaiah told K.V. to let Perkins inside the apartment.

{¶5} K.V. testified that she let Perkins inside the apartment, and then went back to Isaiah's bedroom and sat on the bed while Isaiah was lying down on the bed. Perkins entered the bedroom and asked Isaiah for a cigarette. K.V. testified that Isaiah told Perkins that he was not going to give him a cigarette because Perkins already "owe[d]" him. K.V. testified that she interjected: "Well, if he owe you, don't give him knowing[.]" (Sic.) K.V. testified that Perkins told Isaiah to "keep that bitch on a leash." K.V. testified that Perkins called her the "N" word, and then explained what happened next as follows:

> all of the sudden next thing I know is I was being punched and then I laid back down and he punch, punch, punch in my face. When I was laying back, I couldn't get up, so I tried and kick him and couldn't kick him good so I reached up and scratched him, but I don't remember him leaving or nothing because I blanked out.

{¶6} K.V. testified that, when she woke up, she went back to her apartment and later spoke with the police. K.V. testified that Perkins injured her eye, which still caused her pain and blurry vision.

{¶7} On cross-examination, K.V. acknowledged that she consumed two beers that evening before Perkins entered Isaiah's apartment. K.V. also acknowledged that she told officers that she did not have a knife during the incident, even though officers never asked her if she had a weapon.

{¶8} Isaiah provided a similar version of the events. Isaiah testified that he and Perkins were close friends at the time of the incident. Isaiah testified that Perkins appeared "really drunk"

when he entered his apartment and asked him for cigarettes. Isaiah testified that he told Perkins he was not going to give him cigarettes, and then explained what happened next as follows:

> the next thing he said, "You need to keep your B on your leash," and then he went to wailing on her and I couldn't get up because I was in so much pain, to defend her, but then he said, he said "If you don't. . ." and then he just started kicking her in her privacy [sic], kicking her and hitting her in the eye. It was just one mess.

Isaiah testified that he called the security guard, who then called 911. On cross-examination, Isaiah testified that he did not see K.V. fight back, and that Perkins ran out of his apartment after the incident.

{¶9} Officer Waterhouse with the Akron Police Department testified that he responded to the scene. According to Officer Waterhouse, K.V. had a large lump on her left eye, which he described as a severe injury. Officer Waterhouse took pictures of K.V.'s injuries, which the State presented to the jury. The pictures showed K.V.'s swollen left eye. Officer Waterhouse testified that K.V. was visibly upset, and that her injuries were consistent with a blunt force trauma. Officer Waterhouse also testified that Perkins sustained some scratches, but he could not recall where.

{¶10} Relevant to this appeal, K.V. told Officer Waterhouse that she did not have a knife even though Officer Waterhouse never asked K.V. if she had a weapon. Defense counsel brought up this fact during his cross-examination of Officer Waterhouse, and the following exchange occurred:

| [Defense Counsel]: | A knife was brought up as part of your conversation [with K.V.], wasn't it? |
| [Officer Waterhouse]: | Yes. I believe so. |
| [Defense Counsel]: | You never asked her about a knife, did you? |
| [Officer Waterhouse]: | I did not. |
| [Defense Counsel]: | She volunteered that information, didn't she? |

[Officer Waterhouse]: Correct.

When defense counsel asked if Officer Waterhouse thought it was unusual for K.V. to volunteer this information without being prompted, Officer Waterhouse answered that it was not unusual at the time. Officer Waterhouse explained that the "call notes" mentioned a knife, so he was aware of it. Defense counsel then questioned Officer Waterhouse about the call notes. Officer Waterhouse explained that call notes are generated by dispatch and contain information provided by whomever called 911. Officer Waterhouse explained that this information is accessible to the State, and that his recollection of the call notes in this case was that they mentioned a knife.

{¶11} On re-direct examination, the State brought up the "call log[.]" Defense counsel objected on the basis that the State did not provide the call notes/call log to defense counsel, and asked for a sidebar. Prior to the sidebar, the prosecutor stated that defense counsel "was doing a full line of cross-examination about the call logs and alleging that there was a knife. I'm trying to pull that up to say 'No. It's not in there.'" Defense counsel then reiterated his request for a sidebar, which the trial court granted.

{¶12} The parties then discussed the call notes/call log at a sidebar, during which defense counsel moved for a mistrial because the prosecutor "blurted out to [the] jury that there is no knife in the call log." The trial court indicated that it would not allow the State to present the call notes/call log, and denied defense counsel's motion for mistrial. The trial court indicated that it would strike the prosecutor's remark about the call notes/call log from the record, and would instruct the jury to disregard it. After the sidebar, the trial court instructed the jury as follows:

> I'm going to ask you to strike what the prosecutor said about there not being a knife involved. You cannot consider that in your deliberations on guilt or innocence, because I'm going to instruct you that you can't consider it. Statement is to be stricken from the record okay.

{¶13} Lastly, the State presented testimony from Officer Tournoux, who also responded to the scene. Officer Tournoux testified that he spoke with Perkins at the scene, and that Perkins appeared to be intoxicated. Officer Tournoux testified that Perkins told him K.V. physically attacked him after a verbal argument, so he pushed her down and left the apartment. Officer Tournoux testified that K.V.'s eye was extremely swollen, and that Perkins's version of the events was inconsistent with K.V.'s injuries. Officer Tournoux testified that Perkins had minor scratches on his face and neck, which appeared to be defensive wounds.

{¶14} The State played a portion of Officer Tournoux's bodycam video for the jury. In the video, Perkins explained to Officer Tournoux that K.V. attacked him after a verbal argument. Perkins claimed K.V. "got up and grabbed [him], scratched [his] face up, knocked [him] down, [and] smashed [his] hat." Perkins then claimed that he "pushed [K.V.] down, that was it, and left the house . . . ." At no point in the bodycam video did Perkins claim K.V. had a knife.

{¶15} On cross-examination, defense counsel asked Officer Tournoux whether it would surprise him if Officer Waterhouse testified that the call notes indicated that a knife was used during the incident. Officer Tournoux explained that he did not review the call notes, and that he did not recall a knife being involved in the incident.

{¶16} The State then proffered evidence that is not relevant for purposes of this appeal. At the end of the State's case, the State moved to admit its exhibits, including the officers' bodycam footage and pictures of K.V.'s injuries. The defense presented no witnesses. Defense counsel moved for acquittal under Crim.R. 29, which the trial court denied.

{¶17} The trial court then instructed the jury, which included an instruction on self-defense. The trial court also instructed the jury that statements of counsel are not evidence, and to disregard any statements stricken from the record. The trial court specifically instructed the jury

that it "must disregard any statements made by counsel for the City of Akron regarding the reference to whether or not a knife was referenced in the call logs."

{¶18} The jury found Perkins guilty of assault. The trial court sentenced Perkins to 180 days in jail with credit for time served. Perkins now appeals, assigning as error that the trial court erred by denying his motion for a mistrial.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING PERKINS' MOTION FOR A MISTRIAL.**

{¶19} In his sole assignment of error, Perkins argues that the trial court abused its discretion when it denied his motion for a mistrial based upon prosecutorial misconduct. For the following reasons, this Court overrules Perkins's assignment of error.

{¶20} "When a defendant moves for a mistrial based on prosecutorial misconduct, the trial court must determine whether 'the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced.'" *State v. Dukes*, 2023-Ohio-2863, ¶ 24 (9th Dist.), quoting *State v. Dukles*, 2013-Ohio-5263, ¶ 33 (9th Dist.). "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *State v. Knight*, 2004-Ohio-1227, ¶ 6 (9th Dist.). "The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him." *Dukles* at ¶ 33. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 2008-Ohio-6266, ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Accordingly, "[a] reviewing court is to consider the trial record as a whole, and is to ignore harmless errors 'including most constitutional violations.'" *Knight* at ¶ 6, quoting *State v. Lott*, 51 Ohio St.3d 160, 166 (1990).

{¶21} "We recognize that the trial judge is in the best position to determine whether the declaration of a mistrial is warranted under the circumstances as they have arisen in the courtroom." *State v. Edwards*, 2017-Ohio-7231, ¶ 12 (9th Dist.). Accordingly, this "Court reviews the trial court's denial of a motion for a mistrial for an abuse of discretion." *State v. Flowers*, 2012-Ohio-3783, ¶ 32 (9th Dist.). An abuse of discretion is more than an error of judgment; it means the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶22} Here, Perkins argues that the prosecutor's remark in front of the jury about a knife not being mentioned in the call notes amounted to prosecutorial misconduct because: (1) the remark disclosed a matter not supported by admissible evidence; and (2) the prosecutor's remark implied knowledge of evidence outside the record that supported the State's version of the events. Perkins also argues that the fact that the trial court struck the prosecutor's remark from the record demonstrates that the remark was improper.

{¶23} Perkins further argues that the prosecutor's remark deprived him of a fair trial because the central issue in this case was whether he acted in self-defense. Perkins argues that whether K.V. had a knife was crucial to his claim of self-defense, and that the prosecutor's improper remark implied that K.V. did not have a knife. Perkins argues that the prosecutor's improper remark was so devastating to his case that it could not be remedied by a curative instruction to the jury. For the following reasons, this Court disagrees.

{¶24} Having reviewed the entire record, this Court concludes that the trial court did not abuse its discretion by denying Perkins's motion for a mistrial based upon prosecutorial

misconduct. Even assuming the prosecutor committed misconduct by stating that the call notes did not mention a knife, this Court cannot say that, but for the prosecutor's misconduct, the jury would not have convicted Perkins of assault. *Dukles*, 2013-Ohio-5263, at ¶ 33 (9th Dist.); Akron City Code 135.03 (regarding assault). Immediately after the sidebar wherein the trial court denied defense counsel's motion for a mistrial, the trial court struck the prosecutor's remark from the record, and instructed the jury to disregard it. In its final instructions to the jury, the trial court instructed the jury that statements of counsel are not evidence, and to disregard any statements stricken from the record. Additionally, the trial court specifically instructed the jury that it "must disregard any statements made by counsel for the City of Akron regarding the reference to whether or not a knife was referenced in the call logs." "As this Court has repeatedly stated, '[i]t is presumed that the jury will follow the court's instructions.'" (Alteration in original.) *State v. Ford*, 2023-Ohio-2220, ¶ 26 (9th Dist.), quoting *State v. Spaulding*, 2018-Ohio-3663, ¶ 86 (9th Dist.).

**{¶25}** Furthermore, the jury heard testimony from K.V. and Isaiah indicating that Perkins struck K.V. several times, causing a severe injury to K.V.'s left eye. The State presented pictures of K.V.'s eye injury to the jury. The jury also heard testimony from Officer Tournoux indicating that Perkins's version of the events (i.e., that K.V. attacked him and that he pushed her down) was inconsistent with K.V.'s injuries. Officer Tournoux also testified that Perkins had minor scratches on his face and neck, which appeared to be defensive wounds. The jury also viewed a portion of Officer Tournoux's bodycam video wherein Perkins claimed he pushed K.V. down after K.V. attacked him and scratched his face. At no point during the bodycam video did Perkins claim K.V. had a knife. Considering the record as a whole, this Court cannot say that, but for the prosecutor's remark, the jury would not have convicted Perkins of assault. *See Dukles*, 2013-Ohio-5263, at ¶ 33 (9th Dist.). Consequently, Perkins's assignment of error is overruled.

III.

{¶26}  Perkins's assignment of error is overruled.  The judgment of the Akron Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

JOSEPH SHELL, Attorney at Law, for Appellant.

DEBORAH S. MATZ, Director of Law, and BRIAN D. BREMER, Assistant Director of Law, for Appellee.