[Cite as *State v. Duncan*, 2024-Ohio-5290.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240135 |
| | | TRIAL NOS. 23/TRC/8033/A/B |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| CRYSTAL DUNCAN, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed in Part and Appeal Dismissed in Part

Date of Judgment Entry on Appeal: November 6, 2024


*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Phoebe Cates*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1} A two-car collision, followed by defendant-appellant Crystal Duncan's erratic behavior and exhibition of several other signs of intoxication, resulted in officers conducting a field sobriety test and ultimately arresting her. But, because the officers improperly applied the field sobriety test, the court excluded those results at trial, while nevertheless permitting the officers who administered the test to testify as to her general demeanor and inability to follow instructions during the test. Ms. Duncan now appeals, asserting three assignments of error regarding the partial denial of her motion to suppress as it related to the probable cause for her arrest, the admittance of the officers' testimony about her behavior during the field sobriety test, and the sufficiency and weight of the evidence relied on by the trial court. Ms. Duncan also appealed her conviction for an improper turn under Cincinnati Mun.Code 506-68, but because she did not assign any error to that judgment, that portion of the appeal is dismissed. After a comprehensive review of the record, for the reasons explained below, we overrule all three of her assignments of error and accordingly affirm the trial court's judgment convicting Ms. Duncan of operating a motor vehicle while under the influence.

I.

{¶2} During an afternoon drive in March 2023, Ms. Duncan improperly turned onto Queen City Avenue, crashing into another vehicle in the process. Cincinnati Police were called to the scene of the accident, but before they arrived, the other individual involved in the accident, S.C., observed Ms. Duncan acting erratically. Immediately after the collision, Ms. Duncan exited from her car, approached S.C., and began angrily blaming S.C. for the collision. She began stomping between and around the two vehicles situated in the middle of the road. In an attempt to avoid further

confrontation, S.C. exited from her vehicle and moved to the sidewalk, while Ms. Duncan remained fuming in the road near the two vehicles.

**{¶3}** Matters did not improve, as S.C. witnessed Ms. Duncan attempt to pry open S.C.'s car door, even though she was no longer inside the vehicle. Ms. Duncan's child then exited from the vehicle and seemed to want to calm her mother down, but they both tumbled to the ground. Seeing the aftermath of the accident, a passerby stopped to check on S.C. as Ms. Duncan began walking towards them. At that point, the individual invited S.C. into her vehicle for safety's sake, and they drove several blocks down the road to avoid any further confrontation with Ms. Duncan, as she was angry and acting unpredictably.

**{¶4}** Two officers then arrived at the scene and began investigating the series of events. In speaking with Ms. Duncan, the officers noticed erratic behavior and emotions, and that she offered varying descriptions of the accident that failed to comport with the scene unfolding before them. Their curiosity piqued, one officer asked Ms. Duncan if she had consumed any alcohol, which she vehemently denied.

**{¶5}** Nevertheless, the officers later testified that Ms. Duncan had an odor of alcohol on her, her eyes were glassy and bloodshot, and her speech was slurred. These observations, coupled with her erratic behavior, her inability to provide a consistent recount of the accident, and S.C.'s experience with Ms. Duncan, prompted the officers to administer a field sobriety test. Specifically, one of the officers (who was in training at the time) administered the test, which consisted of the Horizontal Gaze Nystagmus ("HGN") and walk-and-turn tests. While conducting the tests, the officer committed several errors that evinced a lack of compliance with the National Highway Traffic Safety Administration ("NHTSA") manual along with a lack of clarity in the standards applied or details of the tests.

3

**{¶6}** The State ultimately charged Ms. Duncan with operating a vehicle while under the influence of alcohol under R.C. 4511.19(A)(1)(a). Because of these flaws in the testing protocol, the trial court granted in part Ms. Duncan's motion to suppress the overall results of the field sobriety test, finding it noncompliant with the applicable standards. The trial court denied the other portion of the motion to suppress, after concluding that the officers had probable cause to arrest her. Despite the court's partial granting of her motion, the officers testified at trial as to their general observations of Ms. Duncan's behavior during the test. After her conviction at a bench trial, Ms. Duncan now appeals.

II.

**{¶7}** In her first assignment of error, Ms. Duncan asserts that the trial court erred in denying the portion of her suppression motion arguing that the officers lacked probable cause to arrest her.

**{¶8}** Decisions on motions to suppress present "mixed questions of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. Therefore, "[w]e must accept the trial court's factual findings if they are supported by competent, credible evidence, but we review de novo [its] application of the law to those facts." *State v. Pippin*, 2017-Ohio-6970, ¶ 15 (1st Dist.), citing *Burnside* at ¶ 8. More specifically, "questions of probable cause are reviewed de novo on appeal." *Id.*, citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

**{¶9}** In deciding "whether an officer had probable cause to arrest, courts 'examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause.'" *State v. Thornton*, 2018-Ohio-2960, ¶ 20 (1st Dist.), citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). More specifically, an arrest for

operating a vehicle while under the influence ("OVI") is supported by probable cause when "'at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source . . . sufficient to cause a prudent person to believe that the suspect was driving under the influence.'" *Id.*, quoting *State v. Homan*, 89 Ohio St.3d 421, 427 (2000). In considering the totality of the facts and circumstances, courts do not insist on a showing of actual criminal activity, just "a probability or substantial chance" of such activity. *Id.* at ¶ 20-21.

**{¶10}** Here, the officers testified that when they arrived on scene and attempted to speak to each party about the accident, Ms. Duncan's convoluted retelling of the accident varied the longer she spoke, and it seemed inconsistent with the aftermath of the accident. They smelled an odor of alcohol on her, they observed that she could not follow directions to the field sobriety test, and they noticed her erratic behavior. One officer even testified that her eyes were glassy and bloodshot, her speech was slurred, and she was uncooperative at points in the investigation. S.C. also reported to the officers her observation about Ms. Duncan's erratic and confrontational behavior upon exiting from her vehicle. While some of her behavior could be chalked up to understandably being concerned about her child's well-being in the aftermath of the collision, "'probable cause does not require officers to rule out [an] innocent explanation for suspicious facts.'" *Id.* at ¶ 22, quoting *District of Columbia v. Wesby*, 138 S.Ct. 577, 588 (2018).

**{¶11}** Therefore, even though some considerations might weigh in Ms. Duncan's favor, probable cause does not require officers to rule out every possible explanation before they decide to arrest someone if sufficient facts suggest culpability. Additionally, this court has held that probable cause exists in cases such as this one when, after a collision, the individual acted strangely, had bloodshot eyes, slurred his

speech, was unable to follow directions, and had an odor of alcohol. *See State v. Rice*, 2017-Ohio-9114, ¶ 27 (1st Dist.); *State v. Assefa*, 2023-Ohio-385, ¶ 14 (1st Dist.).

{¶12} These same signs were exhibited by Ms. Duncan, and consistent with our precedent, we agree with the trial court's probable cause assessment and overrule her first assignment of error.

III.

{¶13} Next, Ms. Duncan argues that even though the trial court correctly suppressed the results of her field sobriety test, it improperly allowed the officers to testify as to her demeanor during the administration of the test and its subparts.

{¶14} Although not explicitly stated, Ms. Duncan seems to argue that the admission of the officers' testimony regarding their observations was unduly prejudicial under Evid.R. 403, as it morphed into a discussion of the inadmissible results of the field sobriety test. Relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, [or] confusion of the issues." Evid.R. 403. We review a trial court's admission of evidence under an abuse of discretion standard. *See State v. Walker*, 2018-Ohio-3918, ¶ 7 (1st Dist.). An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah,* 2021-Ohio-3304, ¶ 35.

{¶15} As noted previously, the field sobriety test conducted in Ms. Duncan's case ran afoul of the accepted standards per the NHTSA manual, and therefore, the results were inadmissible (as the trial court concluded). *See State v. Rice*, 2009-Ohio-6332, ¶ 22 (1st Dist.). However, "[i]t is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated," as "[s]uch evidence is relevant and admissible pursuant to Evid.R. 401

6

and 402." *State v. Schmitt*, 2004-Ohio-37, ¶ 12, citing *Columbus v. Mullins*, 162 Ohio St. 419, 421 (1954). When the actual results of the field sobriety tests are inadmissible, an "officer may [still] testify at trial regarding observations made during a defendant's performance" of such tests. *Id.* at ¶ 15.

{¶16} Here, during the administration of the field sobriety test and its subparts, the officers observed that Ms. Duncan could not follow instructions. During the HGN test, the officer told her to keep her head still while the stimulus moved from side to side, but she kept moving her head with the movement of the stimulus. And during the walk-and-turn test, she was told to keep her hands at her sides and take nine heel-to-toe steps, but she proceeded to take long strides. Because even a lay witness may observe and testify as to an inability to follow instructions and infer (along with other indicia in the present record) that the individual may be intoxicated, officers may do the same and their testimony should not be treated differently in terms of admissibility. *Id.* at ¶ 14. The officers' observations in this case were ones that a layperson could perceive and testify to.

{¶17} Ms. Duncan fashions a separate but related argument that one officer's observations were based on his training and experience due to the scientific nature of the HGN test, and therefore, were not observations that he could have offered as a layperson. In this regard, Ms. Duncan relies on Evid.R. 701, which provides that a lay witness's testimony must be "rationally based on the perception of the witness," and she suggests that the officer was essentially presenting expert testimony. But we don't see it that way. In reviewing the relevant transcript, the officer's testimony focused on her inability to follow the instructions to the HGN test as but one indicia of intoxication (among others that he discussed). His observations about her inability to focus and comply with instructions seems like standard fare for lay witness observation. The

Supreme Court of Ohio held that "the HGN test is no different from any other field sobriety test, such as finger-to-nose, walk-and-turn, or one-leg stand" for admissibility purposes. *State v. Boczar*, 2007-Ohio-1251, ¶ 26; *see City of Columbus v. Bickis*, 2010-Ohio-3208, ¶ 16 (10th Dist.), citing *Boczar* at ¶ 25-27 ("Admission of such evidence regarding the HGN test is no different from other nonscientific field sobriety tests."). Simply observing that an individual continuously fails to follow instructions is rationally based on an individual's perception, despite what additional familiarity an officer may have with intoxicated individuals through their professional experience. *See State v. Tucker*, 2023-Ohio-2894, ¶ 43-44 (2d Dist.). Therefore, like the heel-to-toe test, an officer may testify as to their lay observations about an individual's intoxication during the performance of the HGN test, exactly as this officer did.

{¶18} Importantly, we see a distinction between the *results* of the HGN test and mere *observations* made throughout the administration of it. The results of the HGN test consider how many "clues" of intoxication a person exhibits, and based on those "clues," the officer determines whether a person passes the test and the statistical likelihood of intoxication. *See State v. Ricer*, 2018-Ohio-426, ¶ 20 (5th Dist.), citing *Bickis* at ¶ 16-17. But physiological observations made by the officer (the individual being unable to focus steadily, swaying, and failing to follow instructions) are admissible as layperson observations even when the results are inadmissible. *Id.*, citing *Bickis* at ¶ 16-17. Therefore, while the results of the HGN test and the related scientific analysis were inadmissible, the officers' layperson physiological observations were not. And the officers stayed on the correct side of the line in their testimony, offering no commentary on the number of "clues" Ms. Duncan exhibited nor any statistical likelihood about intoxication.

{¶19} Therefore, we find no abuse of discretion and overrule Ms. Duncan's

second assignment of error.

IV.

**{¶20}** In her third and final assignment of error, Ms. Duncan challenges the trial court's judgment on the OVI charge as not supported by sufficient evidence, and alternatively, against the manifest weight of the evidence.

**{¶21}** In reviewing a challenge to the sufficiency of the evidence used to support a criminal conviction, we "must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Anderson*, 2017-Ohio-8641, ¶ 10 (1st Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Therefore, we must decide "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.* As this is a question of law, we review the evidence de novo. *Id.*, citing *In re D.S.*, 2013-Ohio-4565, ¶ 6 (1st Dist.).

**{¶22}** The manifest weight of the evidence standard refers to whether there is a "'greater amount of credible evidence . . . to support one side of the issue rather than the other.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* (6th Ed. 1990). We must look to and weigh the "'evidence and all reasonable inferences, consider[ing] the credibility of witnesses and determine[] whether . . . the [fact finder] clearly lost its way and created such a manifest miscarriage of justice'" so as to justify reversal. *Id.*, quoting *State v. Martin*, 20 Ohio Ap.3d 172, 175 (1st Dist. 1983). When deciding whether a judgment entered by the trial court is against the manifest weight of evidence, we should always "bear in mind the trier of fact's superior, first-hand perspective'" on the presentation of the facts.

*State v. Brown*, 2024-Ohio-2148, ¶ 19 (1st Dist.), quoting *State v. Mickens*, 2009-Ohio-1973, ¶ 30 (10th Dist.).

**{¶23}** The relevant statute provides that "[n]o person shall operate any vehicle . . . if, at the time of the operation . . . [t]he person is under the influence of alcohol . . . ." R.C. 4511.19(A)(1)(a). Therefore, the State must adduce sufficient evidence to support (and the manifest weight of the evidence must be in favor of) the trial court's conclusions that (1) Ms. Duncan operated a vehicle, and (2) while doing so, she was under the influence of alcohol. Ms. Duncan does not contest her operation of the vehicle, so we focus our consideration on the second requirement.

**{¶24}** Ms. Duncan primarily points to the absence of evidence as to her driving or emotional state prior to the collision. Her emotions and reactions following the collision, she maintains, could have resulted from the collision itself, rather than intoxication. She also raises inconsistencies in the evidence surrounding the odor of alcohol because one officer said the smell was stronger once she was placed in the cruiser. Therefore, she believes there was insufficient evidence to support her conviction, or alternatively, that the judgment of the trial court was against the manifest weight of the evidence.

**{¶25}** Ms. Duncan attempts to rely on the fact that despite the officers observing slurred speech, they were able to understand her answers to their questions (thus casting doubt on their observations), and no one ever noticed that she stumbled or fell when she walked in between the cars and the sidewalk (which were at least 50 feet apart). While these points might militate in favor of Ms. Duncan, the record contained several sources and countless examples of her behavior that indicated that she *was* intoxicated when she collided with S.C. Construed in a light most favorable to the State, the odor of alcohol on her breath, her inability to follow instructions, her

inconsistent description of what happened, and her unusual behavior following the car crash certainly would permit a rational fact-finder to conclude that she was driving under the influence. *See State v. Panzeca*, 2020-Ohio-4448, ¶ 16 (1st Dist.), quoting *State v. Colyer*, 2013-Ohio-1316, ¶ 9 (1st Dist.) (evidence that the defendant had "'slurred speech, [a] strong odor of alcohol, [] bloodshot eyes . . . as well as the evidence that his car recently had been in an accident'" was sufficient to support a conviction).

{¶26} Likewise, we have no manifest weight of the evidence concerns based on our review of the record. The evidence admitted at trial did not strongly favor Ms. Duncan, even though she pointed to a few facts that supported her position. But even "'[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed'" one party's testimony over the other. *State v. Brown*, 2023-Ohio-2885, ¶ 15 (1st Dist.), quoting *State v. Robinson*, 2019-Ohio-3144, ¶ 29 (12th Dist.). A "conviction will be reversed in only 'the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Frye*, 2023-Ohio-4150, ¶ 5 (1st Dist.), quoting *Thompkins*, 78 Ohio St.3d at 387. Therefore, even though Ms. Duncan may point to some exculpatory evidence, the weight of the evidence introduced at trial does not compel us to reverse the judgment of the trial court.

{¶27} For these reasons, we overrule Ms. Duncan's third assignment of error.

V.

{¶28} Based on the foregoing analysis, we find that the trial court committed no reversible error, and therefore, we affirm its judgment as to Ms. Duncan's OVI conviction on all grounds. The portion of the appeal relating to the improper turn conviction is dismissed.

Judgment accordingly.

CROUSE and WINKLER, JJ., concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.