[Cite as *State v. Bishop*, 2025-Ohio-4743.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250050 |
| | | TRIAL NOS. C/24/CRB/7910/A/B |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| TYRESE BISHOP, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgments of the trial court are affirmed in part and reversed in part, and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed 50% to appellee and 50% to appellant.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 10/15/2025 per order of the court.**

**By:**_____
       **Administrative Judge**

**[Cite as *State v. Bishop*, 2025-Ohio-4743.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250050 |
| | | TRIAL NOS. C/24/CRB/7910/A/B |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N* |
| TYRESE BISHOP, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: October 15, 2025

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David H. Hoffman*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1}   After entering no-contest pleas, Tyrese Bishop was convicted of carrying concealed weapons ("CCW") and improperly handling firearms in a motor vehicle. Bishop now appeals, and in two assignments of error, he contends the trial court erred by overruling his motion to suppress and committed plain error by failing to merge his convictions. For the following reasons, we affirm in part, reverse in part, and remand the cause to the trial court.

## Factual Background

{¶2}   A Norwood police officer initiated a traffic stop after observing Bishop commit a turn-signal violation. As the officer was completing the traffic citation, he called for a canine unit to conduct a drug sniff on Bishop's vehicle. After the dog alerted, a legal amount of marijuana was found in the car. The officer asked Bishop if he had any contraband in his cross-body bag, and Bishop responded that he had a gun in the bag. Bishop was charged with CCW in violation of R.C. 2923.12(B)(1) and improper handling of firearms in a vehicle in violation of R.C. 2923.16(E)(1). The basis of both charges was Bishop's failure to disclose to the officer that he had a loaded handgun in his vehicle.

{¶3}   Bishop filed a motion to suppress the evidence against him, arguing that the canine sniff was unreliable and an unconstitutional search and seizure because marijuana is now a legal substance, and Bishop was seized after the marijuana was found. Bishop further argued that the officer unconstitutionally seized him and prolonged the traffic stop to conduct the dog sniff. Bishop did not challenge the police questioning as a *Miranda* violation.

{¶4}   At the hearing on the motion, the Norwood officer testified that he initially observed Bishop when they passed each other on Carthage Avenue while

3

traveling in opposite directions. The officer observed Bishop driving while wearing a ski-mask-style face covering. The officer turned his cruiser around and, while following Bishop, he observed Bishop activate his left-turn signal after he had come to a stop at a light. After Bishop turned left, the officer initiated the traffic stop and activated his body-worn camera ("BWC"). Bishop pulled into a United Dairy Farmers store, and parked in a parking spot.

{¶5} The officer identified his BWC, and the video was admitted and played. When the officer initially interacted with Bishop, he noticed that Bishop's window was rolled down about three inches, and Bishop was wearing a cross-body bag that he continued to touch. At two minutes and 21 seconds into the stop, the officer asked Bishop if he had any weapons in the vehicle. Bishop responded, "No." Twenty seconds later, the officer called for the canine unit. When asked why he requested a canine, the officer responded, "Based on what I observed from Mr. Bishop, I suspected there was criminal activity occurring."

{¶6} The video confirmed that the officer requested a canine unit almost immediately after initiating contact with Bishop, and prior to inputting Bishop's information into the computer and before beginning to complete the citation. The officer testified that the canine unit arrived within five-to-six minutes.

{¶7} While awaiting the canine unit, the officer began to complete the traffic citation. The video depicts the officer input Bishop's information into the computer and fill out the citation. When the dog arrived and conducted the sniff, it alerted on Bishop's car. The officer searched the vehicle and found a bag of marijuana and a scale in the center console and a larger bag of marijuana in a pair of pants on the back seat. After finding the marijuana, the officer asked Bishop if he had anything in his bag, and Bishop said he had a gun. The officer discovered a loaded firearm in Bishop's cross-

4

body bag and arrested him.

{¶8} On cross-examination, the officer testified that Bishop was no longer wearing the ski mask when Bishop exited from his vehicle. When the officer approached the vehicle, Bishop had his window cracked and had his license and insurance ready. The officer asked Bishop to step out of the vehicle. Bishop protested, but eventually complied and informed the officer that he did not consent to a search of the vehicle. The officer returned to his cruiser with Bishop's identification and called for the canine unit. When the officer input Bishop's information into his computer, he found no outstanding warrants. The officer began to write the citation six minutes and 26 seconds after the initial stop. The officer had Bishop provide his phone number for the citation but did not have him sign it. The officer retained Bishop's identification.

{¶9} After the dog completed the sniff, the officer told Bishop, "Let's finish this up and we'll get you out of here." The officer testified that he was referring to the investigation based on the dog's alert when he said "finish this up." The officer began searching the vehicle and had not yet given Bishop the citation. The officer found marijuana, a scale, and a ski mask and acknowledged that the marijuana was legal. The officer testified that he did not advise Bishop of his *Miranda* rights.

{¶10} When cross-examination was complete, and the State had no redirect, the trial court asked the officer, "Officer, you said, 'Based on what I observed from Mr. Bishop, I thought criminal activity was going on. Can you explain that?'" The officer had previously testified that he requested a canine because he suspected criminal activity. The officer responded,

> Yes, sir. So it was May the 9th. You can see that we're all wearing
>
> short sleeves. I observed Mr. Bishop wearing, like, a full ski mask, and

I thought that was unusual.

Additionally, once the car stopped, Mr. Bishop only rolled the window down a few inches. And then when I asked him to get out of the car, he refused multiple times until I told him he would be arrested if he didn't get out of the car.

And then the other thing I observed was the cross-body bag that he was wearing that he continued to touch and pull his arms over while he was sitting in the driver's seat.

{¶11} The court asked the officer what he was thinking when Bishop continued to touch the bag. The officer explained that he "was thinking that he was concealing, illegally, contraband or items."

{¶12} The parties proceeded to closing arguments. Bishop argued that the officer unconstitutionally delayed the traffic stop to wait for a canine unit. Bishop further argued that any reasonable suspicion or probable cause provided by the dog's alert should not be valid because the dog was trained to detect a legal substance, rendering the sniff a search. Bishop relied on a Colorado case, *People v. McKnight*, for the proposition that "a canine trained to detect cannabis is not a reliable source to offer probable cause for a search." Bishop next argued that any statements he made must be suppressed because the officer failed to inform him of his *Miranda* rights. Finally, Bishop argued the traffic stop was invalid because he used his turn signal.

{¶13} The State argued that the stop was valid because the officer observed Bishop commit a turn-signal violation. Within minutes of the stop, the officer requested a canine unit, which is not an improper delay. The canine arrived within five-to-six minutes, which did not delay the stop. After the dog alerted, Bishop informed the officer he had a firearm in his bag.

6

{¶14} The trial court found that the officer had reasonable suspicion to prolong the stop to investigate for the reasons the officer put forth in his testimony. The court overruled the motion to suppress.

{¶15} Bishop entered no-contest pleas to both charges and was found guilty.

### Motion to Suppress

{¶16} In his first assignment of error, Bishop contends that the trial court erred in denying his motion to suppress. Specifically, Bishop argues that when a police officer continues to detain a person stopped for a traffic violation to ask questions unrelated to the original purpose of the stop, without any articulable facts giving rise to a suspicion of some illegal activity, the continued detention for questioning constitutes an illegal seizure.

{¶17} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence, then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Childers*, 2023-Ohio-948, ¶ 7, citing *Burnside* at ¶ 8.

{¶18} In the motion to suppress, Bishop contended that his seizure was unlawfully prolonged without reasonable suspicion because "[p]olice had no authority to delay the traffic stop for a drug-detection dog to sniff the exterior of the vehicle." Additionally, he argued that the dog sniff was an unconstitutional search. He further argued that "any reasonable suspicion or probable cause provided by the dog's alert should not be legal because the dog was trained to detect a legal substance, rendering the sniff a search."

{¶19} On appeal, Bishop challenges the questioning by police that occurred

after the dog-sniff and search of the vehicle because it was "not related to the purpose of the original stop" and not based on reasonable suspicion. Bishop did not include this argument in his motion to suppress. The only arguments made in the motion to suppress were that Bishop's seizure was unlawfully prolonged without reasonable suspicion, and that the dog's sniff was itself an unconstitutional search. During closing argument, for the first time, Bishop specifically claimed that his statements should be suppressed "because the officer failed to inform Bishop of his *Miranda* rights." However, although Bishop asserted his Fifth Amendment claim, for the first time, in his oral argument, "[Bishop] never moved the trial court to amend his written motion nor did he attempt to establish 'good cause' for relief from the waiver." *City of Columbus v. Ridley*, 2015-Ohio-4968, ¶ 27 (10th Dist.) Accordingly, the trial court did not address Bishop's Fifth-Amendment claim when ruling on the motion to suppress. *See id.* ("Thus, the trial court's ruling is properly confined to the issues raised by the written motion to suppress. Crim.R. 12(H)"). We note that Bishop did not argue on appeal that the court erred by disregarding his *Miranda*-violation argument.

{¶20} "When filing a motion to suppress evidence, a defendant must 'raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge.'" *State v. Wright*, 2024-Ohio-1763, ¶ 13 (1st Dist.), citing *State v. Billings*, 2021-Ohio-2194, ¶ 15 (1st Dist.), quoting *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 219 (1988). A motion to suppress must "state with particularity the legal and factual issues to be resolved," thereby placing the prosecutor and court "on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived." *State v. Schindler*, 70 Ohio St.3d 54, 58 (1994).

{¶21} "It is well-settled law that issues not raised in the trial court may not be

raised for the first time on appeal because such issues are deemed waived." *Ridley* at ¶ 28, quoting *State v. Barrett*, 2011-Ohio-4986, ¶ 13 (10th Dist.); *Xenia* at 218 (The failure of a defendant to adequately specify the grounds for his motion to suppress evidence results in a waiver of that issue on appeal.). By failing to raise the argument that his statements should be suppressed because of a violation of his *Miranda* rights in his motion to suppress, Bishop has waived his opportunity to raise the issue on appeal. *See Wright* at ¶ 13, citing *State v. Wintermeyer*, 2019-Ohio-5156, ¶ 10 ("Therefore, when a defendant fails to present an argument at a suppression hearing, that argument is waived."); *Schindler* at 58; *State v. Fricke*, 2016-Ohio-2747, ¶ 24 (2d Dist.) ("If a motion to suppress fails to state a particular basis for relief, the issue is waived and cannot be argued on appeal."). Thus, Bishop waived the argument on appeal. *See Wright* at ¶15.

{¶22} Notwithstanding the waiver, the Fifth-Amendment challenge is without merit. Bishop contends that once the search of the vehicle did not reveal any illegal contraband, the officer "improperly prolonged the traffic stop for additional questioning." Bishop further contends that after the vehicle search, the traffic citation was completed, and the officer had no reason to detain him to question him about his bag. During the motion to suppress, Bishop did not pose any questions to the officer regarding his suspicions after the search was complete.

{¶23} Once a police officer has issued a traffic citation, it is unreasonable to detain the driver further absent reasonable suspicion. *See State v. Bell*, 1995 Ohio App. LEXIS 4564, *4 (1st Dist. Oct. 18, 1995), citing *State v. Retherford*, 93 Ohio App.3d 586 (2d Dist. 1994). However, a driver may be detained "beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop

9

. . . ." *State v. Batchili*, 2007-Ohio-2204, ¶ 15.

{¶24} At the time of the vehicle search, the officer had not issued the traffic citation to Bishop. The officer had completed the citation but had not yet obtained Bishop's signature. Bishop contends that the discovery of a legal amount of marijuana did not justify the officer's additional questioning of Bishop without other facts creating a suspicion of criminal activity.

{¶25} The focus of the hearing on the motion was the alleged illegality of the delay due to the request for a canine unit and the dog sniff. In fact, the officer was not questioned regarding his reasonable suspicion after discovering the marijuana and scale. Furthermore, there are factors to consider beyond the discovery of the marijuana in determining the legality of the search. The officer articulated that he initially suspected criminal activity due to Bishop's wearing of a ski mask while driving, his arguing with the order to get out of the car, refusing to exit from the car until threatened with arrest, and the constant touching of the bag, not only while seated in his car but during the entire time that the ticket was being written. The additional facts based on the car search, the discovery of the marijuana and scale and the ski mask, gave rise to a reasonable suspicion of criminal activity that allows an officer to "further detain and implement a more in-depth investigation of the individual." *State v. Robinette*, 80 Ohio St.3d 234, 241 (1997); *State v. Hale*, 2024-Ohio-4866, ¶ 24 (officer's discovery of more facts allowed him to extend defendant's detention so that he could investigate his additional suspicions of criminal activity).

{¶26} Accordingly, we overrule the first assignment of error because we conclude that the officer's further detainment of Bishop was based on reasonable suspicion of criminal activity and because we do not reach the issue of whether Bishop's statements should have been suppressed because Bishop waived that

argument by not raising it below.

## Allied Offenses

{¶27} In the second assignment of error, Bishop argues that the trial court committed plain error by failing to merge Bishop's convictions. We agree.

{¶28} Bishop concedes that he failed to preserve the issue of merger at trial, so we review the issue for plain error. *See State v. Rogers*, 2015-Ohio-2459, ¶ 28 ("the failure to raise the allied-offense issue at the time of sentencing forfeits all but plain error"). Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice. *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶29} R.C. 2941.25, Ohio's multiple-count statute, provides, "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one. The determination of whether offenses are allied contemplates "three separate factors – the conduct, the animus, and the import." *State v. Ruff*, 2015-Ohio-995, paragraph one of the syllabus.

> As a practical matter, when determining whether offenses are allied offenses, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Id.* at ¶ 31.

{¶30} Bishop was convicted of CCW under R.C. 2923.12(B)(1) and improperly

handling firearms in a motor vehicle under R.C. 2923.16(E)(1). Both statutes require a person to disclose to a law-enforcement officer that the person possesses a handgun, before or at the time a law-enforcement officer asks, when the person is stopped for a law-enforcement purpose. R.C. 2923.12(B)(1) and 2923.16(E)(2).

**{¶31}** Offenses are dissimilar in import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 23. Because there were no victims, this court must first determine whether the resulting harm for both offenses was the same. The harm that flows from both offenses is the failure to disclose that "a person has a readily accessible firearm that could be used to harm others." *See State v. Crossley*, 2020-Ohio-6639, ¶ 21 (2d Dist.) ("The harm or danger that flows from the offense of carrying a concealed weapon is that a person has a readily accessible firearm that could be used to harm others. The same danger flows from the offense of improperly handling firearms in a motor vehicle . . . .").

**{¶32}** The offenses were not committed separately because both stemmed from Bishop failing to inform the officer that he had a firearm in his bag. The offenses were for failing to inform the officer of the presence of the gun, not possessing or transporting the gun. Bishop was permitted to carry a concealed handgun without a license, including in a motor vehicle, as a qualifying adult. *See* R.C. 2923.111(B) through (C); R.C. 2923.16(F)(5).

**{¶33}** The motivation was to conceal the fact that Bishop had a firearm in his bag. Thus, the offenses were committed with a single animus because Bishop's motive was to hide the firearm. *See Crossley* at ¶ 25 ("Crossley's concealed-carry and improperly-handling-firearms offenses are based on Crossley's single motive to hide a loaded firearm under the front seat of his truck. Therefore, the offenses were

committed with a single animus.").

**{¶34}** Citing to *State v. Martin*, 2024-Ohio-10 (1st Dist.), the State argues that "this Court has held that no plain error occurs where a trial court fails to merge carrying-a-concealed-weapon and improper-handling offenses." *Id.* at ¶ 37. However, in *Martin*, it was unclear whether "the trial court may have determined that Martin had already completed all elements of carrying a concealed weapon before he got into the car with the gun." *Id.* at ¶ 37. Here, it is clear that both offenses occurred when Bishop failed to notify the officer that he had a handgun in his bag, and therefore, the trial court committed plain error in failing to merge the convictions.

**{¶35}** Accordingly, we sustain Bishop's second assignment of error.

## Conclusion

**{¶36}** Having overruled Bishop's first assignment of error and sustained the second, we affirm the judgments in part, reverse them in part, and remand the cause to the trial court for the State to elect which offense it will pursue, and for the trial court to resentence Bishop accordingly.

Judgments affirmed in part, reversed in part, and cause remanded.

**KINSLEY, P.J.,** and **MOORE, J.,** concur.