[Cite as *State v. Lewis*, 2026-Ohio-1937.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250407 |
| | | TRIAL NOS. C/24/TRC/21223/A/B |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| ANTHONY LEWIS, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgments of the trial court are affirmed in part, and the appeal is dismissed in part.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 5/27/2026 per order of the court.**

**By:**_____
     **Administrative Judge**

[Cite as *State v. Lewis*, 2026-Ohio-1937.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250407<br>TRIAL NOS. C/24/TRC/21223/A/B |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| ANTHONY LEWIS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed in Part and Appeal Dismissed in Part

Date of Judgment Entry on Appeal: May 27, 2026

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Candace Crear,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Christine Y. Jones*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Judge.**

**{¶1}** After a jury trial, Anthony Lewis was convicted of operating a motor vehicle while intoxicated ("OVI"), in violation of R.C. 4511.19(A)(1)(a). In three assignments of error, Lewis argues that the trial court erred in overruling his motion to suppress, the prosecutor committed misconduct by shifting the burden in closing remarks, and his conviction was not supported by credible evidence. For the following reasons, we affirm the judgments of the trial court in part and dismiss the appeal in part.

## Factual Background

**{¶2}** After colliding with two separate vehicles, Anthony Lewis was charged with two counts of failing to maintain an assured clear distance, and driving impaired in violation of R.C. 4511.19(A)(1)(a). Lewis filed a motion to suppress the results of the nonstandardized tests and the standardized field-sobriety test ("SFST"), and argued that without those test results, the officer lacked probable cause to arrest him.

**{¶3}** Before the hearing began, Lewis stated that he was not challenging reasonable suspicion due to the two collisions. His challenge was focused on the field-sobriety tests and the lack of probable cause to arrest once the test results were suppressed.

**{¶4}** A Colerain Township officer testified that while on patrol, he was dispatched to two auto accidents that occurred within rapid succession at around 9:00 a.m. When he arrived, he observed a Chevy S10 truck and a sedan, both heavily damaged. The driver of the sedan told him that Lewis, who was driving the truck, hit his vehicle, fled, and hit a second vehicle. The officer approached Lewis, who was leaning against a pole, and immediately smelled the odor of alcohol coming from his person. While speaking with Lewis, he observed slurred and mumbling speech. Lewis

exhibited "very slowed motor skills" when retrieving his driver's license.

{¶5} The officer asked Lewis where he was coming from and where he was going. After smelling alcohol, he asked Lewis if he had had anything to drink, and Lewis admitted that he had consumed rum earlier that morning. The officer found a bottle of alcohol on Lewis's front passenger floorboard which was more than half empty.

{¶6} The officer asked Lewis to perform SFSTs, but not the walk-and-turn ("WAT") or the one-leg-stand ("OLS") tests because he had an injury to his foot. The only SFST the officer attempted to conduct was the horizontal-gaze-nystagmus ("HGN") test, but Lewis had difficulties listening to and following the instructions. Although Lewis would not look at the top or bottom of the stimulus as instructed, the officer was able to determine that both of his eyes were tracking equally. After determining a lack of nystagmus in both eyes during the lack-of-smooth-pursuit test, the officer had to terminate the testing. The officer repeatedly instructed Lewis and asked him to repeat the instructions, but Lewis was unable to follow the instructions.

{¶7} The officer testified that he held the stimulus approximately six to eight inches from Lewis and determined that his eyes were tracking equally, and he had equal pupil size. After moving the stimulus out for two seconds, he observed the eye jerking back and forth. He checked both eyes two times and observed a lack of smooth pursuit. The officer was unable to determine whether Lewis exhibited smooth pursuit at 45 degrees because Lewis was unable to follow instructions. Lewis looked tired and confused and kept asking if he could go home.

{¶8} Because he was unable to do the other two SFSTs, the officer conducted the alphabet ("ABC") count, the number count, and the finger count. Although those tests are not scientifically validated by the National Highway Traffic Safety

Administration ("NHTSA"), he conducted the tests to observe Lewis. Lewis performed poorly on those tests and could not perform as instructed. Based on his training, experience, and observations, the trooper arrested Lewis for driving while under the influence of alcohol.

{¶9} On cross-examination, the officer acknowledged Lewis said he had consumed alcohol at 2:00 a.m., approximately eight hours before the interaction. The officer believed Lewis had consumed alcohol more recently. The bottle of rum the officer found in Lewis's vehicle had a lid on it.

{¶10} The officer testified that if the NHTSA instructions are not followed, the test results are less reliable. The officer documented a lack of smooth pursuit in his report, but did not note any other clues because he terminated the test. The NHTSA manual requires four out of six clues on the HGN to indicate impairment

{¶11} The officer reiterated that the other tests he conducted are not SFSTs, but they are included in the NHTSA manual, along with instructions to administer them. With respect to the ABC test, the manual states, "These techniques are optional and may help the officer with their decision to have the driver exit the vehicle. These techniques have not been scientifically validated by NHTSA but can still be useful in obtaining evidence of impairment."

{¶12} On redirect, the officer demonstrated the finger-counting and ABC tests while reciting the instructions. He testified that Lewis did not perform the tests as instructed. Lewis incorrectly counted on the finger-counting test. The officer recited the HGN instructions and testified that he held the stimulus between 12 and 18 inches. He further explained that he had incorrectly testified earlier regarding the distance of the stimulus.

{¶13} After the officer testified, the State rested, and the parties proceeded to

closing arguments. Lewis argued that the three tests were not scientifically valid and should be suppressed. He further argued that once those tests were suppressed, the officer lacked probable cause to arrest Lewis for OVI. Lewis contended that each sign of impairment had an innocent explanation. Lewis, who was 63 years old, leaned on the pole due to his foot injury, the rum bottle was closed and not intended to be consumed in one sitting, his consumption the previous night would account for the odor of alcohol, and he was sleepy. Lewis did not seek to suppress the partial HGN test.

{¶14} The State argued that the NHTSA manual stated that the nonstandarized tests may be used to obtain evidence of impairment through officer observation. The officer observed slurred speech, slow and delayed motor skills, an odor of alcohol on his person, a half-empty bottle of rum in his vehicle, a difficulty and inability to follow instructions. And Lewis admitted to drinking.

{¶15} The court found probable cause to arrest based on the following factors: (1) an accident involving two cars, (2) the observations of the officer, (3) the officer's four years of experience, (4) the officer's testimony was credible, (5) the officer's observations of an odor of alcohol, mumbling, slow motor skills, and slurred speech, (6) one half-empty bottle of rum, (7) defendant's admission to drinking, (8) poor performance on numbers test, ABS test, finger-counting test, and an inability to perform the SFSTs, (9) court's review of case law, and (10) SFSTs are not required for probable cause and the State may rely on the physiological factors the court just mentioned. The court denied the motion to suppress, and the case proceeded to a jury trial.

{¶16} K.B. testified that while driving on the morning of July 28, 2024, he stopped at a red light on the top of a hill. When the light turned green, K.B. was hit

from behind before he could proceed through the intersection. About a minute after the car hit him, the driver reversed and drove away. At the next light down the hill, the driver hit someone else, which disabled that vehicle. The second collision occurred about a minute or two after the first.

{¶17} The bumper and the trunk on K.B.'s car were pushed in and pieces were hanging off the car. K.B. did not immediately get a good look at the driver. The hood of the vehicle that hit his car was pushed in, and when the driver drove away, he traveled at a pretty high rate of speed.

{¶18} K.B. pulled into a car lot on the right side of the road and exited from his vehicle to survey the damage. K.B. then went to speak with Lewis who had also exited from his vehicle. K.B. obtained Lewis's name and insurance information and called the police. Lewis explained that he hit K.B. because either everything slowed down very quickly or K.B. slowed down very quickly. K.B. testified that he did not slow down quickly because he was already stopped at the light. K.B., who was standing a foot away from Lewis, did not smell alcohol on Lewis's breath.

{¶19} The Colerain police officer testified that he was called to Pippin Road for an auto accident on a Sunday morning at 10:00 a.m. The weather was sunny that morning. Pippen road is a four-lane street, not including turn lanes, with a 35 m.p.h. speed limit. Throughout his testimony, clips of his body-worn-camera video were played for the jury.

{¶20} When the officer arrived, he saw two vehicles with heavy damage, and one car was disabled. After further investigation, he discovered a third damaged vehicle. Two individuals approached him, K.B. and another gentleman, and identified Lewis as the driver of the car that hit them.

{¶21} As the officer approached Lewis, he began to smell the odor of an

alcoholic beverage. The officer testified that he smelled it when he initially made contact with Lewis. He purposely walked away to clear his nose and to make sure that the odor was coming from Lewis. The officer approached Lewis again to confirm the smell, and the odor was coming from Lewis.

{¶22} The officer testified about the various drug and alcohol courses he had completed, in addition to the training he had received. The officer explained the HGN test involves looking for involuntary jerking of the eyes. The first portion was looking for smooth pursuit, and that was only the part of the test he was able to complete on Lewis. The officer was unable to determine if Lewis had sustained nystagmus at maximum deviation or onset prior to 45 degrees because he had to terminate the test due to Lewis's inability to follow instructions.

{¶23} The officer used his pen as a stimulus, instructed Lewis to follow the tip of his pen, and pointed to the tip of his pen. Lewis looked at the bottom of the pen, stared directly at him, or looked behind him off into the distance. Because Lewis had an injury to his foot, the officer did not think it would be fair to ask him to complete the WAT or OLS tests.

{¶24} Instead, the officer had Lewis count to four, forwards and backwards, on his fingers, excluding the thumb. Although not a standardized test, it was an additional test from the NHTSA manual that allowed him to observe Lewis. Lewis could not remember what to count, and when he reached his pinky, he counted five instead of four. Next, the officer asked him to count backwards from 73 to 58. Lewis paused to think between numbers and continued to count backwards to 53 instead of stopping at 58. The last test he asked Lewis to perform, the ABC test, consisted of reciting the alphabet from the letter H to Y. The officer testified that Lewis did not perform as instructed because he paused between letters to think and stopped at the

letter P. Then, Lewis asked the officer to drive him home.

{¶25} Based on his training, experience, and observations, the officer arrested Lewis for operating a motor vehicle while under the influence of alcohol. The basis for his opinion was the two car crashes, the odor of alcohol, the performance on the tests, Lewis's bloodshot eyes, and his inability to follow instructions. Lewis was mumbling and exhibited slurred speech and odd movements. When the officer examined Lewis's vehicle, he saw a half-empty bottle of dark liquor and a bottle of Coca-Cola. Lewis admitted to drinking rum and Coke at 2:00 a.m., and told the officer the bottle contained rum. The officer explained that alcohol impairs a person's judgment, perception, and makes it more difficult to think. He believed that Lewis's ability to drive was appreciably impaired due to alcohol, and that Lewis was unsafe to drive due to his perception and reaction time.

{¶26} When they arrived at the police station, Lewis did not perform the breathalyzer test as instructed because he did not blow directly into the tube. The officer observed Lewis blowing lung air out of the sides of his mouth.

{¶27} After the officer's testimony, both parties rested. The jury found Lewis guilty of OVI. Lewis opted for a bench trial on the two traffic charges of failing to maintain an assured clear distance, one for each accident. The trial court found him guilty on the first one based on K.B.'s testimony and not guilty on the second one because the State presented no evidence regarding that accident.

**Motion to Suppress**

{¶28} In his first assignment of error, Lewis contends that the trial court erred in denying his motion to suppress because the HGN was not performed in substantial compliance with the NHTSA manual, and the officer did not have probable cause to arrest him for driving impaired.

9

**{¶29}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, this court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See id*. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*.

**{¶30}** The standard for determining whether an officer had probable cause to arrest a suspect for OVI is whether the facts and circumstances within the police officer's knowledge are sufficient to cause a reasonably prudent person to believe that the defendant was driving under the influence. *See State v. Ruberg*, 2013-Ohio-4144, ¶ 11 (1st Dist.); *State v. Homan*, 89 Ohio St.3d 421, 427 (2000). In making this determination, an appellate court examines the totality of facts and circumstances surrounding the arrest. *Homan* at 427.

**{¶31}** Lewis first contends that the trial court erred in overruling his motion to suppress because the HGN was not conducted in substantial compliance with the NHTSA manual because the officer initially testified that he held the stimulus six to eight inches from Lewis and later testified that he held the stimulus eight to 12 inches away. The record reflects that the officer did correct himself with regard to the distance. On redirect, he stated that he held the stimulus "twelve to eighteen inches" not eight to 12 as he initially stated.

**{¶32}** Lewis did not raise this issue during the motion to suppress. During closing arguments, Lewis argued that the nonstandardized tests should be excluded, not the HGN. Lewis acknowledged that the officer was unable to complete the HGN and only observed two clues on the part he completed. Lewis stated that "after

suppressing the other tests, we have the partial HGN" and argued that "what's left [after suppressing the nonstandardized tests,], I don't think is enough for probable cause."

**{¶33}** "It is well-settled law that issues not raised in the trial court may not be raised for the first time on appeal because such issues are deemed waived." *State v. Bishop*, 2025-Ohio-4743, ¶ 21 (1st Dist.), quoting *City of Columbus v. Ridley*, 2015-Ohio-4968, ¶ 28 (10th Dist.), quoting *State v. Barrett*, 2011-4986, ¶ 13 (10th Dist.). Therefore, Lewis waived the argument on appeal. *See Bishop* at ¶ 21, citing *State v. Wright*, 2024-Ohio-1763, ¶ 15 (1st Dist.).

**{¶34}** Even if Lewis had made this argument, it is without merit. The result of an HGN test depends upon the number of clues the officer observes while conducting the test. *See State v. Duncan*, 2024-Ohio-5290, ¶ 18 (1st Dist.), citing *State v. Ricer*, 2018-Ohio-426, ¶ 20 (5th Dist.). Admittedly, the officer did not complete the HGN, and therefore, did not obtain any test results. Consequently, there were no test results of the HGN test to suppress. The officer testified regarding his observations of Lewis while attempting to administer the HGN test, and an officer's observations are admissible as layperson observations. *See id.*; *City of Zanesville v. Reaver*, 2017-Ohio-4149, ¶ 20 (5th Dist.) ("[T]he Ohio Supreme Court has made clear that the officer may testify regarding observations made during a defendant's performance of standardized field sobriety tests even absent proof of substantial compliance.").

**{¶35}** Lewis further argues that the trial court erred in finding probable cause for his arrest. Here, the trial court found that the officer had probable cause to arrest Lewis for driving impaired based upon Lewis colliding with two cars and the officer's experience, observations, and credibility. Lewis smelled of alcohol, was mumbling, and exhibited slow motor skills and slurred speech. Lewis admitted to consuming

alcohol and performed poorly on the numbers test, ABS test, and finger-counting test, and was unable to perform the HGN.

{¶36} Under the totality of the circumstances, the trial court did not err in finding that the officer had probable cause to believe that Lewis was operating a vehicle while under the influence. These facts and circumstances, when considered as a whole, would have justified an objectively reasonable officer in believing that Lewis had been driving impaired. *See Duncan*, 2024-Ohio-5290, at ¶ 10-11 (1st Dist.) (finding probable cause where defendant crashed into another vehicle, had bloodshot eyes, slurred speech, an odor of alcohol, and could not follow SFST instructions); *State v. Rice*, 2017-Ohio-9114, ¶ 27 (1st Dist.) (officer had probable cause to arrest where defendant had a collision, slurred his speech, was unable to follow instructions, and had an odor of alcohol). Thus, the trial court did not err in concluding that the officer presented sufficient evidence to establish probable cause to arrest.

{¶37} Lewis primarily argues that the officer lacked probable cause because his consumption of alcohol occurred nearly eight hours before the two accidents and the encounter with the officer. Additionally, his poor performance on the nonstandardized tests may have been simple mistakes, and because there were no thresholds established by NHTSA for these tests, the results were highly subjective. However, as previously discussed, the court found that Lewis exhibited numerous physiological factors that supported probable cause to arrest Lewis for driving impaired.

{¶38} We overrule the first assignment of error.

### Prosecutorial Misconduct

{¶39} In his second assignment of error, Lewis contends the prosecutor engaged in misconduct by shifting the burden to the defense during closing argument

in violation of Lewis's right to a fair trial.

**{¶40}** In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct in closing argument, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced. *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). In determining whether a prosecutor's remarks were prejudicial, an appellate court must consider "the effect the misconduct had on the jury in the context of the entire trial." *State v. Keenan*, 66 Ohio St.3d 402, 410 (1993). "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *City of Akron v. Perkins*, 2025-Ohio-5320, ¶ 20 (9th Dist.), citing *State v. Knight*, 2004-Ohio-1227, ¶ 6 (9th Dist.).

**{¶41}** Lewis's theory of defense, as expressed in opening remarks and reinforced by his cross-examination of the police officer and closing argument, was that the police jumped to conclusions and assumed Lewis was intoxicated. In opening remarks, Lewis explained, "Very early on during their investigation, they assumed that Mr. Lewis is intoxicated, and he never ha[d] a fair opportunity to prove to them that he wasn't." Lewis contended that the officer was forced to rely on less reliable evidence that can mimic old age and medical issues. His defense theory was that all of the alleged signs of impairment could be attributed to his medical conditions or his old age.

**{¶42}** During the State's closing argument, the prosecutor stated,

> Look at these tests. The defendant said he has an injured foot, emphysema, COPD, and that's with the lungs, and that he has no teeth. So far, what I've talked about has nothing to do with this. Nothing to do with balance. Nothing to do with how he speaks. All right. And nothing

to do with his breathing.

. . .

You heard [the officer] reiterate the directions for all of these tests. The defendant's hearing played no role, because eventually the defendant heard the instructions, even if it did take a couple times.

Additionally, let's look at the defendant's statements regarding how these accidents occurred. Initially, it was, "Those people slowed down all of a sudden." He blamed it on the two victims that he hit.

Then later on, it was, on body-worn camera, he says, "Oh, it was a mishap." So he's trying to take a little bit more of the blame. But then back at the station, he goes on to say, 'Yeah, apparently,' when [the officer] is asking him the standard OVI questions that he is trained to ask. 'Yeah, apparently.' That sounds like someone that doesn't remember being in two accidents.

Now the defense wants to chalk this up to a 64 year old man having an elderly moment, and blaming the signs of intoxication on his foot, his lungs, and his teeth. Well, look back to the evidence and the signs of intoxication that I've been referring to. I'm not concentrating on balance. I'm not concentrating on his lungs. I'm not concentrating on his speech. What I'm concentrating on are simple things you learn in life, that the defendant can't do because he's under the influence of alcohol when he decided to drive.

This was not an elderly moment. Being 64 years old is not elderly. This is not how a 64 year old person acts when they're sober.

The last topic I want to touch on is something that's not in

evidence. This accident occurred last July, July of 2024. There's been plenty of time to request and review the defendant's medical records. But there are no medical records - -

At that point, defense counsel objected, alleging burden shifting.

**{¶43}** The parties adjourned to the court's chambers for a conference. Lewis argued that the State was alluding to the lack of medical records to substantiate medical issues. Because the defense has no obligation to put forth evidence, Lewis insisted that the State was shifting the burden of proof to the defendant and creating an impermissible inference to the jury that if there were medical issues, defense would have provided medical records. The prosecutor explained that he was commenting on Lewis's alleged medical issues.

**{¶44}** The trial court sustained the objection and instructed the jury to disregard any comments regarding Lewis's medical records.

**{¶45}** Lewis began his closing argument by reiterating his defense theory by stating, "Mr. Lewis is not guilty. All of the evidence that you heard from the officer about the clues of impairment that he saw, could have very well been caused by Mr. Lewis's age or Mr. Lewis's medical conditions." Throughout the closing, Lewis explained how the alleged indicators of impairment could have been due to his old age or medical conditions.

**{¶46}** Lewis attempted to convince the jury that he should be found not guilty of driving impaired because all of the alleged indicia of impairment were due to his age or his medical conditions. The prosecutor's remarks were an attempt to point out the lack of evidence, specifically medical records, to support Lewis's theory.

**{¶47}** During closing arguments, the prosecutor possesses wide latitude to summarize the evidence and zealously advocate the State's position. *See State v.*

15

*Martin*, 2018-Ohio-1061, ¶ 34 (1st Dist.), citing *State v. Collins*, 89 Ohio St.3d 524, 528 (1992). "While the prosecution cannot shift the burden of proof to the defendant during closing argument, it can comment on the defense's failure to offer any evidence to support its theory of the case." *Id.* Comments on a defendant's failure to offer evidence in support of his case "do not imply that the burden of proof has shifted to the defense." *Collins* at 528.

**{¶48}** Viewing the statements in the context of the entire trial, the prosecutor's remarks were proper comments on the evidence. *See Martin* at ¶ 40 (remarks that defendant chose not to test the items for fingerprints and DNA was a proper response to the defense's assertion that without the DNA or fingerprint evidence, the State failed to prove his guilt); *Collins* at 527-528 (prosecutor's comments that defendant offered no evidence that he paid child support directly to mother or that he had no income to pay child support constituted fair comment on the lack evidence offered by defendant to support these theories). Comments upon the defendant's failure to offer evidence in support of his theory do not imply that the State has shifted the burden of proof to the defendant. *See Martin* at ¶ 24; *Collins* at 528.

**{¶49}** Accordingly, we overrule the second assignment of error.

### Manifest Weight

**{¶50}** In his third assignment of error, Lewis argues that his conviction for operating a vehicle while under the influence was not supported by credible evidence because the officer's findings of impairment in this case were explained by other evidence unrelated to alcohol consumption.

**{¶51}** When considering a challenge to the weight of the evidence, the court examines "the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in

the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172 (1983), paragraph three of the syllabus. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *See State v. Higgins*, 2025-Ohio-5118, ¶ 24 (1st Dist.).

**{¶52}** At trial, K.B. testified that he was at a red light when he encountered Lewis. When the light turned green, Lewis hit K.B. then backed up and drove off. Lewis rear-ended a second vehicle at the next light about a minute later, disabling his vehicle.

**{¶53}** The officer testified that he observed an odor of alcohol on Lewis, then walked away and reapproached Lewis to ensure the odor was coming from Lewis. The officer observed that Lewis had bloodshot eyes, was mumbling and slurring his words, and exhibiting odd movements. Lewis was unable to follow instructions when the officer attempted to conduct the HGN, the nonstandardized tests, and while blowing into the breathalyzer. The officer found a half-empty bottle of rum and a bottle of Coca-Cola, and Lewis admitted to drinking rum and Coke at 2:00 a.m. Based on his observations, the officer testified that Lewis's ability to drive was appreciably impaired due to alcohol and it was unsafe for Lewis to drive.

**{¶54}** Given this evidence, we cannot say that the jury lost its way or created such a manifest miscarriage of justice that the OVI conviction must be reversed.

**{¶55}** Consequently, we overrule Lewis's third assignment of error.

### Conclusion

**{¶56}** Because Lewis presented no challenge to the conviction for failing to maintain an assured clear distance in the case numbered C/24/TRC/21223/A, we dismiss the appeal in part as it relates to that charge. Having overruled Lewis's three

assignments of error, we affirm the judgments of the trial court in part and dismiss the appeal in part.

Judgments affirmed in part and appeal dismissed in part.

**KINSLEY**, **P.J.,** and **BOCK, J.,** concur.